SAFEGUARD SCIENTIFICS, INC., CenterCore, Inc., and NordSystems, Inc.

v.

LIBERTY MUTUAL INSURANCE CO.

Civ. A. No. 90–6592.

United States District Court, E.D. Pennsylvania.

June 6, 1991.

---

Coleen M. Meehan, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Robert St. leger Goggin, R. Bruce Morrison, Harry J. Levant, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for defendant.

## MEMORANDUM AND OPINION

KATZ, District Judge.

This is a dispute about coverage under a liability insurance contract for the costs of defending and settling a complex business lawsuit after a three month trial in New York. Each side takes a position at the extreme. The insurance company declines to contribute to the costs of defense and settlement, even though the policy provided coverage for slander and the underlying lawsuit contained a claim for slander. It relies on a wooden reading of the underlying complaint and a narrow exclusion in the insurance contract, ignoring modern pleading rules and the facts. The insured seeks compensation for fees and expenses incurred before it even notified the carrier of the claim and for the full amount of a settlement it negotiated, undifferentiated between contract disputes arising from an acquisition which went sour, not remotely covered by the insurance contract, and the slander claim to which coverage applies. I attempt to steer a middle course, guided by my nonjury trial record, in largely uncharted waters. Each side's shibboleths abstracted from factually inapposite case law lead to opposite conclusions. Carefully read, no authority compels either side's extreme result, nor indeed my own findings and conclusions.

## I. BACKGROUND.

Liberty Mutual issued to Safeguard a Commercial General Liability Policy (the "policy"), pursuant to which Liberty Mutual agreed to insure plaintiffs against damages for, *inter alia*, personal injury and advertising injury in the amount of $2,500,-000, covering the period from January 1,

1988 to January 1, 1989. Plaintiffs' Exh. 1. The "named insured" in the policy includes Safeguard, its financially controlled subsidiaries, and subsidiaries thereof. *Id.,* General Amendatory Endorsement, ¶ 1.

On June 15, 1988, Frank J. Barnes, Jr., a former president and officer of NordSystems (formerly known as "Nord Plan (USA), Inc."), filed a complaint against NordSystems and CenterCore in the Supreme Court of New York, Suffolk County. Plaintiffs' Exh. 4 (*Barnes v. Nord Plan (USA), Inc.,* No. 88–10514.) The complaint alleged four counts: (I) breach of contract; (II) breach of fiduciary duty; (III) breach of contract to employ Barnes as consultant; and (IV) libel, slander, and defamation. In Count IV, Barnes alleged that certain CenterCore and NordSystems officers made defamatory statements which were knowingly false when made. Plaintiffs' Exh. 4, ¶ 49.

Plaintiffs [1] retained the law firm of Morgan, Lewis & Bockius to represent them in the *Barnes* litigation. Plaintiffs filed an answer to the *Barnes* complaint as well as the following counterclaims: breach of contract; fraud; breach of fiduciary duty; breach of contract as an assignee; and breach of duties of good faith and fair dealing. The parties engaged in extensive discovery from July 1988 through February 1989. By February 1, 1989, plaintiffs had substantially completed discovery and incurred attorney's fees and expenses totalling $376,000.

At the end of January 1989, Safeguard's Commercial Insurance Manager, Thomas E. Fleming, reviewed the *Barnes* complaint for the first time. He determined that Count IV of the complaint, alleging defamation, was covered by the personal and advertising injury provision of the policy. By letter dated February 1, 1989, Fleming submitted the *Barnes* complaint to Liberty Mutual for coverage. Plaintiffs' Exh. 3. On March 15, 1989, Liberty Mutual sent Safeguard a postcard acknowledging receipt of the claim and assigning a claim number. Plaintiffs' Exh. 5.

On March 30, 1989, Barnes filed his Amended Verified Complaint and Reply to Counterclaims, in which he specifically set forth the allegedly defamatory statements made by defendants CenterCore and NordSystems and again alleged that such statements "were knowingly false when made, and were intended to destroy Barnes' ability to practice his trade and conduct his business." Plaintiffs' Exh. 18, ¶ 92.

The parties filed cross-motions for summary judgment. On February 6, 1990, Justice Doyle denied Barnes' motion and granted in part and denied in part CenterCore and NordSystems' motion for partial summary judgment. In denying the portion of CenterCore and NordSystems' motion relating to the defamation claim, Justice Doyle held that Barnes could prevail at trial on that claim, and overcome the qualified privilege defense, by showing that the statements were made "with actual malice which is defined as personal spite, ill will, or culpable recklessness or negligence." *Barnes v. Nord Plan (USA), Inc.,* No. 88–10514, slip op. at 8 (N.Y.Sup.Ct., Suffolk County, Feb. 6, 1990) (Plaintiffs' Exh. 11). On February 28, 1990, Richard J. Giacco, Safeguard's Associate General Counsel, wrote to Liberty Mutual to request a meeting to discuss the *Barnes* claim, enclosing a copy of Justice Doyle's opinion. Plaintiffs' Exh. 10.

In the meantime, Liberty Mutual reviewed the *Barnes* complaint in consultation with its legal department. In a letter dated March 8, 1990, Liberty Mutual's Claims Manager, Richard R. Bauman, advised Safeguard that it had no duty to defend or to indemnify plaintiffs in the *Barnes* litigation, because Barnes alleged in his complaint that the allegedly defamatory statements were knowingly false when made and thus fell within a policy exclusion for knowingly false defamation.[2]

---

**1.** In order to avoid confusion, this opinion will consistently refer to plaintiffs in the instant action as "plaintiffs," although they were defendants in the underlying *Barnes* litigation.

**2.** In this letter, Bauman also stated that the defamation claim fell under an exclusion for injury "expected or intended from the standpoint of the Insured." Plaintiffs' Exh. 13. Because Liberty Mutual did not pursue this argu-

Plaintiffs asked Liberty Mutual to reconsider its decision not to defend the *Barnes* action, but to no avail; Liberty Mutual continued to deny coverage based upon the exclusion for knowingly false statements.

CenterCore and NordSystems appealed to the New York Supreme Court, Appellate Division, from that part of Justice Doyle's opinion which denied their motion as to Barnes' claims for defamation and breach of fiduciary duty. In addition, they filed an application for a stay of the trial pending appeal. The Appellate Division of the New York Supreme Court denied this application.

Trial commenced on August 21, 1990, rendering moot the pending appeal of Justice Doyle's denial of summary judgment. At the close of Barnes' case, plaintiffs moved for a directed verdict on the defamation claim, arguing that Barnes had not presented sufficient evidence to support that theory of liability. The court reserved decision on the motion. After plaintiffs had just begun to present their defense, and prior to the court's determination of plaintiffs' motion for a directed verdict on the defamation issue, the parties settled the Barnes action on November 21, 1990.

Under the parties' Stipulation of Settlement, CenterCore and NordSystems agreed to make the following payments to Barnes: $750,000 to be paid on December 3, 1990; $75,000 to be paid on December 1, 1991; and $50,000 to be paid on December 1, 1992. Plaintiffs' Exh. 29. With respect to the 1991 and 1992 payments, CenterCore and Nordsystems arranged for an annuity to be established in favor of Barnes for which they paid $117,155.00. *Id.* Thus, CenterCore and NordSystems paid $867,-155.00 in settlement of the Barnes Action.

In addition, in order to reach a settlement in the Barnes Action, CenterCore and NordSystems agreed to pay Barnes a certain portion of any sums recovered in the present action against Liberty Mutual, specifically one half of all amounts exceeding $20,000 up to a maximum of one half of $500,000. *Id.* Barnes' maximum potential

ment at trial, this opinion does not address the

payment from the sums recovered in this action is thus $250,000.

Plaintiffs incurred attorney's fees and expenses in the *Barnes* litigation totalling $1,480,207.17. Having heard the testimony regarding the extensive discovery conducted, various motions brought by and opposed by plaintiffs, the length of the trial, time spent attempting to settle the case, and other matters concerning the defense of the underlying litigation by plaintiffs' counsel, I find the fees and expenses incurred in the *Barnes* action to be fair and reasonable.

## II. DISCUSSION.

▮▮▮ Plaintiffs filed a complaint in this court on October 15, 1990 while the underlying case was still being tried, claiming breach of contract and seeking a declaratory judgment and damages. The court has subject matter jurisdiction over this diversity action, 28 U.S.C. § 1332 (1982), and is guided by general principles of Pennsylvania insurance law. Thus, the court must read the insurance policy as a whole and construe it according to the plain meaning of its terms. *C.H. Heist Caribe Corp. v. American Home Assur. Co.*, 640 F.2d 479, 481 (3d Cir.1981). A term is ambiguous only if reasonable people, considering it in the context of the entire policy, would differ as to its meaning. *United Servs. Auto. Ass'n v. Elitzky*, 358 Pa.Super. 362, 369, 517 A.2d 982, 986 (1986). Any such ambiguity must be resolved in favor of the insured because the insurer wrote the policy. *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 587, 152 A.2d 484, 487 (1959). In addition, the intent of the parties must be determined not only from the language of the policy, but from all the surrounding circumstances. *Elitzky*, 358 Pa.Super. at 369, 517 A.2d at 986.

### A. *Liberty Mutual's Duty to Defend.*
#### 1. *The Exclusion for Knowing Falsity.*

▮▮▮ Under Pennsylvania law, the right of plaintiffs to a defense turns on whether the claim stated in the complaint potentially comes within the coverage of

issue.

the policy. *Cadwallader*, 396 Pa. at 589, 152 A.2d at 488 (emphasis added). If coverage depends upon the existence of facts yet to be determined, the insurer is obliged to provide a defense "until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage." *C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co.*, 467 F.Supp. 17, 19 (E.D.Pa.1979). In addition, an "insurer is obliged to defend the entire claim if some of the allegations in the complaint fall within the terms of coverage and others do not." *Id.; see American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 75 (3d Cir.1985). Thus, the court must look to the nature of the allegations in Count IV of the *Barnes* complaint, the only count to which coverage arguably applies, to determine whether Liberty Mutual had an obligation to defend the plaintiffs in the underlying action.

▇ As an initial matter, I find that Count IV of the *Barnes* complaint, alleging defamation, is covered by the express terms of the policy provision governing "Personal and Advertising Injury Liability." That provision states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B. We will have the right and duty to defend any "suit" seeking those damages.

Plaintiffs' Exh. 1, Section I, Coverage B, ¶ 1(a). "Personal injury" is defined to include "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" as well as "any injury to the feelings or reputation of a natural person." *Id.*, Section V, ¶ 10; General Amendatory Endorsement, ¶ 9(2). Further, the definition of "advertising injury" includes injury arising out of "[o]ral or written publication of material that slanders or libels a person or organiza-

tion or disparages a person's or organization's goods, products or services." *Id.*, Section V, ¶ 1(a). These provisions are unambiguous and apply on their face to the allegations of defamation contained in Count IV of the *Barnes* complaint.

▇ Liberty Mutual, however, points to language in the complaint that the allegedly defamatory statements were knowingly false when made, and argues that the following exclusion for knowingly false defamation applies:

> 2. Exclusions.
>
> This insurance does not apply to:
>
> a. "Personal injury" or "advertising injury":
>
> (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

Plaintiffs' Exh. 1, Section 1, Coverage B, ¶ 2(a). Under Pennsylvania law, when an insurer seeks to defend against coverage based upon an exclusion in the policy, it is the insurer's burden to demonstrate that the exclusion applies. *Little v. MGIC Indem. Corp.*, 649 F.Supp. 1460, 1466 (W.D. Pa.1986), *aff'd*, 836 F.2d 789 (3d Cir.1987). In addition, an insurer "is not excused from its duty to defend until it becomes apparent that there are no circumstances under which the insurer would be responsible." *Id.* at 1466–67.

As stated above, the duty to defend arises when the complaint alleges a claim which is "potentially" covered by the policy. The claim for defamation stated in the *Barnes* complaint was for slander of a private figure. The judge in the underlying case correctly determined that this claim was viable if the slander was reckless or negligent. *Barnes v. Nord Plan (USA), Inc.*, No. 88–10514, slip op. at 8 (N.Y.Sup. Ct., Suffolk County, Feb. 6, 1990) (Plaintiffs' Exh. 11). Thus, even though the complaint pleaded only an intentional defamation, it stated a viable claim for either a negligent or reckless slander. Under New York's liberal amendment rules, the pleading could have been conformed to the evidence at trial, provided no prejudice was shown. *Fitzpatrick v. American Honda*

*Motor Co.,* 78 N.Y.2d 61, 69, 571 N.Y.S.2d 672, 676, 575 N.E.2d 90, 94 (1991).

The evidence at trial, in fact, was inconclusive as to whether the defamation was intentional on the one hand, or either negligent or reckless on the other. Although at the trial in the underlying action Center-Core's chief operating officer, George E. Mitchell, denied making certain allegedly defamatory statements about Barnes' incompetency, he did admit making remarks to those in the industry which arguably reflected on Barnes' competency and integrity. Thus, if the jury had answered special interrogatories it could have resolved a factual question in favor of Barnes on the defamation claim, without finding that the plaintiffs in the present case had knowledge of the falsity of the allegedly defamatory statements when they made those statements.

The law is of two minds in determining the extent to which an insurance company owes an obligation to defend. On the one hand, the law looks to the four corners of the complaint to define the claim. *See, e.g., United Servs. Auto. Ass'n v. Elitzky,* 358 Pa.Super. 362, 368, 517 A.2d 982, 985 (1986). On the other hand, "where a claim *potentially* may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril." *Cadwallader,* 396 Pa. at 589, 152 A.2d at 488 (emphasis added). My reconciliation of these two notions is that the claim entitles the insured to a defense if it could be reasonably amended to state a claim under the policy.

The Pennsylvania Supreme Court has consistently denied coverage for assault and battery claims where the policy excluded such intentional torts. *See Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246 (1988); *Wilson v. Maryland Cas. Co.,* 377 Pa. 588, 105 A.2d 304 (1954); *see also Donegal Mut. Ins. Co. v. Ferrara,* 380 Pa.Super. 588, 552 A.2d 699 (1989). However, these claims could not be reasonably amended to come within the coverage of the policy. *Wilson,* 377 Pa. at 594, 105 A.2d at 307. The Pennsylvania Supreme Court has also distinguished but not disapproved a Superior Court holding that a claim alleging both reckless and intentional slander triggered the duty to defend under a policy that excluded coverage for injuries expected or intended by the insured. *Gene's Restaurant,* 519 Pa. at 309 n. 1, 548 A.2d at 247 n. 1 (citing *United Servs. Auto. Ass'n v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982 (1986)). The fact that the defamation claim in *Elitzky* alleged both reckless and intentional slander whereas the present one alleges only intentional slander should not be determinative of the substantive right to a defense under an insurance policy. To make it determinative would be to turn the issue of coverage over to the vagaries of an opponent's pleading. The overstatement of a claim or the hyperbole of the pleader should not control whether an insured is entitled to a defense. "This is particularly so because the drafter of the pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurer's) interest to reveal them." *Fitzpatrick,* 78 N.Y.2d at 69, 571 N.Y.S.2d at 676, 575 N.E.2d at 94. I conclude, therefore, that because the defamation claim was potentially within the scope of the policy, Liberty Mutual had a duty to defend plaintiffs in the *Barnes* litigation.

The New York Court of Appeals recently came to the same conclusion in *Fitzpatrick.* The court rejected the wooden application of the "four corners of the complaint" rule, adopting instead a rule "requiring the insurer to provide a defense where, notwithstanding the complaint allegations, underlying facts made known to the insurer create a 'reasonable possibility that the insured may be held liable for some act or omission covered by the policy.'" 78 N.Y.2d at 70, 571 N.Y.S.2d at 677, 575 N.E.2d at 95 (citation omitted).[3]

**3.** *Fitzpatrick* significantly undercuts the vitality of *Federal Ins. Co. v. Cablevision Systs. Dev. Co.,* 637 F.Supp. 1568, 1576–80 & 1583 n. 12 (E.D.N.Y.1986), in which a federal court applying New

Thus, the court held that the insurer had a duty to defend under a policy covering officers, directors, and shareholders of the named insured, despite the fact that the complaint identified a defendant as an "independent contractor" and failed to allege that the claim arose in connection with his activities as an officer, shareholder, or director of the insured.

The *Fitzpatrick* court pointed out that the rationale underlying the "four corners of the complaint" rule is that because the duty to defend is broader than the duty to indemnify, an insurer must defend a claim even where extrinsic facts suggest that the claim may prove to be meritless or outside the policy's coverage. The court reasoned that this rationale does not support the proposition that complaint allegations are the sole criteria for measuring the scope of the duty to defend, for in cases such as the instant one, "wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify." *Id.* at 66, 571 N.Y.S.2d at 674, 575 N.E.2d at 92.

I predict that the Pennsylvania Supreme Court[4] would find the New York Court of Appeals' reasoning persuasive and adopt its approach. As discussed below, I find that Liberty Mutual knew of plaintiffs' potential liability for reckless or negligent defamation when it received notice of the suit. Thus, it was obligated to provide a defense notwithstanding Barnes' allegations that the statements were knowingly false when made.

Alternatively, I find a factual basis for concluding that Liberty Mutual had a duty to defend. The wording of the policy suggests that Liberty Mutual intended that the application of the exclusion was not limited to the four corners of the complaint but rather required looking at extrinsic evi-

dence. The clause in question excludes coverage "if [the slander at issue is] done by or at the direction of the insured with knowledge of its falsity." Plaintiffs' Exh. 1, Section I, Coverage B, ¶ 2(a). Plaintiffs argue that this language is conditional and requires a finding of knowing falsity before Liberty Mutual will be relieved of its duty to defend. In unrelated litigation in New York, where Liberty Mutual denied coverage under a similar exclusion for knowingly false defamation because defendant Cooprider's counterclaim against Mutual Life Insurance Company of New York ("MONY") alleged intentional defamation, Liberty Mutual itself admitted that the court must examine extrinsic facts to determine whether the exclusion applies: "To determine MONY's intent [regarding the alleged defamation] requires an examination of extrinsic evidence, the factual scenario and the actions of the MONY executives in carrying out their plan to 'crush Cooprider.'" Liberty Mutual's Mem. of Law in Opposition to Plaintiff's Mot. for Partial Summ. Judgment in *MONY v. Liberty Mutual Ins. Co.*, No. 89–4023, at 7 (S.D.N.Y.) (Plaintiff's Exh. 26).

In the present case, finding the conditional language of the exclusion ambiguous and thus construing it against Liberty Mutual because Liberty Mutual wrote the policy, *Cadwallader*, 396 Pa. at 587, 152 A.2d at 487, I find that the exclusion presupposes a factual determination as to whether the slander was done with specific intent. I find from the record before me that the defamatory statements were not made with the requisite specific intent. Nothing in the underlying trial record supports a finding of specific intent or malice. Rather, the record reflects a corporate acquisition gone sour and complaints about Barnes' competence as captain of the failing ship.

---

York law held that the insurer had no duty to defend on facts very similar to the instant case.

**4.** Although neither party argued this point, a significant basis exists for holding that New York law applies to this case under Pennsylvania's flexible policies and interests choice-of-law rule. *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 21–22, 203 A.2d 796, 805–06 (1964); *American Contract Bridge League v. Nationwide Mut.*

*Fire Ins. Co.*, 752 F.2d 71, 74–75 (3d Cir.1985). The facts underlying the *Barnes* case occurred in New York and that action was litigated there. Applying New York law, this court would follow the holding of *Fitzpatrick*. Because I find that the Pennsylvania Supreme Court would also adopt this approach, however, I need not resolve the conflicts issue.

Such complaints, if false, could have resulted from a failure to investigate or a careless investigation of the facts which caused the ship to flounder. If a reasonable factfinder were to find that the statements were false, he or she would be more likely to find negligence or recklessness than to find a specific intent to injure Barnes. Thus, the exclusion for knowingly false defamation does not apply as a factual matter and Liberty Mutual is not relieved of its obligation to defend.

### 2. *Late Notice.*

Liberty Mutual also argues that it was prejudiced by the plaintiffs' late notice of the *Barnes* claim and therefore owed no duty to defend. The policy provides that written notice of an occurrence shall be given by the insured to the insurance company "as soon as practicable after the Insurance Manager of Safeguard Scientifics, Inc. has actual knowledge of the occurrence." Plaintiffs' Exh. 1, General Amendatory Endorsement, ¶ 10(a).

Plaintiffs were aware of the *Barnes* lawsuit shortly after its filing on June 15, 1988. Thomas E. Fleming, Safeguard's Commercial Insurance Manager, had actual notice of the suit by September 1988. Safeguard did not notify Liberty Mutual of the suit, however, until February 1, 1989, shortly after Fleming first reviewed a copy of the *Barnes* complaint and thus knew of the defamation claim. By this time plaintiffs had substantially completed discovery and incurred attorney's fees and expenses totalling $376,000. Liberty Mutual argues that this notice was late within the terms of the policy and that Liberty Mutual was prejudiced by such late notice because it was denied an opportunity to conduct a prompt investigation and to gain early control over the litigation.

The Pennsylvania Supreme Court has held that "where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position."

*Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 76–77, 371 A.2d 193, 198 (1977). The Third Circuit has stated that an insurance company can show prejudice from the late notice "only if its procedural handicap has led to disadvantageous, substantive results—in other words, if the insured's violation of its contract has proximately caused its insurer damages." *Trustees of the Univ. of Pa. v. Lexington Ins. Co.,* 815 F.2d 890, 898 (3d Cir.1987).

In the instant case, I find that the notice to Liberty Mutual was late within the terms of the policy. However, Liberty Mutual has failed to meet its burden of showing prejudice from such late notice. Liberty Mutual refused to defend the plaintiffs in the *Barnes* action based upon its reading of an exclusion in the policy, not based upon the timing of the notice. In addition, Liberty Mutual did not notify the plaintiffs of its refusal to extend coverage until March 8, 1990, over thirteen months after it received notice of the *Barnes* litigation.

Liberty Mutual has not shown that its actions would have been any different had the plaintiffs notified Liberty Mutual of the *Barnes* lawsuit immediately. Because Liberty Mutual has failed to show that "timely notice would have put [it] in a more favorable position," relieving it of its obligations under the policy would be "unduly severe and inequitable." *Brakeman,* 472 Pa. at 76, 371 A.2d at 198.

*Metal Bank of America, Inc. v. Insurance Co. of N. America,* 360 Pa.Super. 350, 520 A.2d 493 (1987), cited by Liberty Mutual in its trial brief, does not mandate a different result. In *Metal Bank,* the court found prejudice as the result of the fact that the insured had litigated the case for over two years and that settlement was already a fait accompli by the time notice was given to the insurers; thus, "the insurers, who were being called upon to provide funds for the settlement had no opportunity to control the proceedings or in any way protect themselves." 360 Pa.Super. at 360, 520 A.2d at 498. In addition, the court found that the passage of time resulted in the disappearance of evidence, the unavailability of witnesses, and the fading of

memories. 360 Pa.Super. at 360 n. 4, 520 A.2d at 498 n. 4. Liberty Mutual has shown no such prejudice in the instant case.

### B. *Damages.*

#### 1. *Breach of the Duty to Defend.*

 Liberty Mutual's refusal to defend the plaintiffs in the underlying action gives rise to a cause of action for breach of the covenant to defend. *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 59, 188 A.2d 320, 322 (1963). Under Pennsylvania law, the damages for breach of the insurer's duty to defend "will ordinarily be the cost of hiring substitute counsel and other costs of the defense." *Id.*

 The plaintiffs argue that the recovery for the breach of the duty to defend amounts to the $1,480,207.17 that plaintiffs expended in defending the *Barnes* action. Liberty Mutual argues that this sum must be reduced by the expenses incurred prior to notice to Liberty Mutual and by the amounts expended in the prosecution of the counterclaims in the underlying action.

Liberty Mutual argues that none of the fees and expenses incurred by the plaintiffs prior to February 1, 1989 (the date plaintiffs notified Liberty Mutual of the *Barnes* action) should be included in the plaintiffs' recovery. Liberty Mutual cites *Crist v. Insurance Co. of N. America*, 529 F.Supp. 601 (D.Utah 1982), in which the defendant insurance companies argued that they were not liable for any litigation expenses incurred prior to tender of defense to them, because no breach of a duty to defend occurs until the insured tenders the defense and the insurer fails to accept that duty. *Id.* at 603. Noting that the insureds bore the responsibility of promptly notifying their insurers of the action, the court ruled that those pretender expenses could not be recovered as a matter of law. *Id.* at 604. The parties have pointed to no Pennsylvania case law on this issue.

I interpret the policy to mean that compliance with the notice requirement triggers the duty to defend. Until the plaintiffs complied with that condition precedent by notifying Liberty Mutual of the *Barnes* litigation, no breach of the duty to defend occurred. Thus, I find that plaintiffs are not entitled to recover the defense costs incurred prior to the date Liberty Mutual was aware of its potential coverage.

At the latest, Liberty Mutual knew that plaintiffs were exposed to liability for negligent or reckless defamation when it received plaintiffs' letter of February 28, 1990 enclosing Justice Doyle's ruling on summary judgment in the underlying case. I find that Liberty Mutual knew this as soon as it received the February 1, 1989 notice. A knowledgeable insurer knows that liability can be found on a private figure's defamation claim even if knowledge of the falsity of the slander is not proven. The earlier notice date is more sensible and realistic; the trigger of coverage need not be a trial judge's confirmation of the obvious. The trigger of coverage is the insurer's knowledge of a viable claim for negligent or reckless defamation.

The excluded amount thus includes all attorney's fees and expenses incurred between the date the complaint was filed (June 15, 1988) and the date plaintiffs notified Liberty Mutual of the action (February 1, 1989). The parties have stipulated that that amount is equal to $376,000.

 Liberty Mutual argues also that plaintiffs are not entitled to recover the expenses incurred in the prosecution of their counterclaims against Barnes in the underlying action. Liberty Mutual reasons that such expenses should be excluded from the damages because no term of the insurance policy imposes a duty to fund counterclaims.

Because I have found that the defamation claim in the underlying suit was potentially covered by the policy, thus giving rise to a duty to defend, Liberty Mutual had a duty to defend the entire claim in the *Barnes* action. *C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co.*, 467 F.Supp. 17 (E.D.Pa.1979); *see American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 75 (3d Cir.1985). Liberty Mutual has pointed to no case law suggesting that an insurance company's obligation does not extend to the litigation of counterclaims raised in the same lawsuit. The counterclaims were not compulsory under New York law. *See*

*Henry Modell & Co. v. Ministers, Elders & Deacons of the Reformed Dutch Church*, 68 N.Y.2d 456, 502 N.E.2d 978, 510 N.Y.S.2d 63 (1986) (New York has no compulsory counterclaim rule). However, the pursuit of the counterclaims was inextricably intertwined with the defense of Barnes' claims and was necessary to the defense of the litigation as a strategic matter. Thus, Liberty Mutual's duty to defend extends to the counterclaims raised in the same proceeding.

Having found that the fees and expenses incurred by the plaintiffs in the underlying action are fair and reasonable, I find that damages for the breach of the duty to defend amount to the total figure expended by the plaintiffs in litigating the underlying action ($1,480,207.17) less the pre-notice expenses ($376,000.00), for a total of $1,104,-207.17.

### 2. Breach of the Duty to Indemnify.

■ An insurer has a duty to indemnify its insured only if it is established that the insured's damages are actually within the policy coverage. *See C.H. Heist Caribe Corp. v. American Home Assur. Co.*, 640 F.2d 479, 483 (3d Cir.1981); *C. Raymond Davis & Sons*, 467 F.Supp. at 21. In the instant case, however, because the plaintiffs settled their dispute with Barnes there was no adjudication of liability and no apportionment of the settlement amount among the different counts of Barnes' complaint. The plaintiffs argue that they are entitled to recover the total amount paid in settlement of the underlying action, $867,-155.00. Liberty Mutual counters that the plaintiffs have the burden of establishing what portion of the settlement is attributable to the defamation count in the *Barnes* action and that because they are unable to carry this burden, no damages are recoverable based upon the settlement amount.

In support of their position that they are entitled to the entire settlement figure, the plaintiffs cite *Pacific Indem. Co. v. Linn*, 766 F.2d 754 (3d Cir.1985). In *Linn*, the Third Circuit affirmed the district court's holding that "the duty to indemnify necessarily had to follow the duty to defend because settlement made it impossible to determine on what theories of liability, if

any, the underlying claimants would have prevailed." *Id.* at 766. The Third Circuit has subsequently clarified the holding in *Linn*, finding it inapplicable to a case similar to the instant one, where the insured, rather than the insurance company, settled the case:

> In [*Linn* ], the district court had directed various insurance companies to defend cases brought against their insured even though that litigation included some claims which were not within the policies' coverage. When cases were later settled by the insurance carriers, the court refused to attempt allocation of indemnity and simply made it correspond to the duty to defend. In that instance, this court noted that by settling without an agreement with the insured, the carrier conceivably could foreclose any right of indemnification by the insured. Here, by contrast, the insured settled the case so it is not exposed to the risk that influenced the *Linn* decision.

*Cooper Labs., Inc. v. International Surplus Lines Ins. Co.*, 802 F.2d 667, 674 (3d Cir.1986) (applying New Jersey law). The court thus remanded the case for a determination of whether an equitable apportionment between covered and noncovered claims must be made. *Id.*; *see American Home Assur. Co. v. Libbey–Owens–Ford Co.*, 786 F.2d 22, 30–31 (1st Cir.1986) (district court should allocate portion of settlement attributable to covered claim based upon any evidence available regarding the intent behind the settlement decision).

■ In order to award plaintiffs the amount of the settlement in the underlying action, therefore, this court would have to make an equitable apportionment of the settlement figure to the defamation count in the underlying action, the only count covered by the policy. The plaintiffs have failed, however, to offer the court any guidance in allocating the settlement amount to the defamation claim. As in any breach of contract action, the plaintiffs have the burden of proving damages resulting from the breach. *Spang & Co. v. United States Steel Corp.*, 519 Pa. 14, 25, 545 A.2d 861, 866 (1988). In addition, generally "damages are not recoverable if they are too speculative, vague or contingent

and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." 519 Pa. at 25–26, 545 A.2d at 866. I find that the plaintiffs have failed to carry their burden of establishing damages related to defendant's breach of its duty to indemnify with reasonable certainty and therefore none shall be awarded.

 Plaintiffs also seek attorney's fees and costs in connection with this action against Liberty Mutual. Because I find that Liberty Mutual did not act unreasonably or in bad faith in refusing to defend the plaintiffs in the *Barnes* litigation, plaintiffs cannot recover these expenses. *Linn*, 766 F.2d at 769.

## III. CONCLUSION.

For the foregoing reasons, I will enter judgment in favor of the plaintiffs in the amount of $1,104,207.17, plus prejudgment interest.