George **SPADA** and Marietta Spada, Plaintiffs,

v.

**UNIGARD INSURANCE COMPANY,** **Defendant.**

**No. CIV.00–1657–BR.**

United States District Court, D. Oregon.

Jan. 15, 2002.

Mark C. McClanahan, William G. Sheridan, Jr., Allen, Sheridan & McClanahan, LLP, Portland, OR, for Plaintiffs.

John A. Bennett, Margaret M. VanValkenburg, Bullivant Houser Bailey, Portland, OR, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Defendant Unigard Insurance Company's Motion for Partial Summary Judgment Pursuant to FRCP 56(b) (# 26), Plaintiffs' Request for Judicial Notice (# 44), Defendant's Motion to Strike Plaintiffs' Exhibits and Affidavits (# 65), and Defendant's Motion to Strike Plaintiffs' Response to Unigard's Concise Statement of Material Facts and Plaintiffs' Separate Concise Statement of Material Facts (# 67).

Plaintiffs bring this diversity action for breach of an insurance contract and restitution. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

For the reasons that follow, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment, **GRANTS in part** and **DENIES in part** Plaintiff's Request for Judicial Notice, and **DENIES** Defendant's Motions to Strike.

## FACTUAL BACKGROUND

The following facts are undisputed except when otherwise noted. Plaintiffs own undeveloped property in Southwest Portland that is adjacent to land and a home owned by William and Jani McCormick.[1] Unigard provided liability insurance coverage to Plaintiffs during the relevant period. In February 1996, heavy rains caused landslides on both Plaintiffs' property and the McCormick property.

### The City of Portland Letters

By letter dated February 22, 1996, the City informed Plaintiffs their property presented a hazard to other properties and/or the public right of way and directed Plaintiffs to remove the hazard by stabilizing the slope on Plaintiffs' property. On February 28, 1996, the City sent another letter to Plaintiffs and again stated it was Plaintiffs' responsibility to provide permanent repairs to the slope "to prevent further landslides and to mitigate the potential for future damage to the public right-of-way." The City sent a third letter to Plaintiffs on August 28, 1996, in which it stated a recent inspection had revealed the hazardous conditions continued to exist on Plaintiffs' property. The City instructed Plaintiffs to take action to correct the conditions on their property within 30 days. The City further notified Plaintiffs that the City would "take appropriate legal action to correct the conditions" if Plaintiffs failed to take the required remedial action within 30 days. The letter also informed Plaintiffs that "property owners found in viola-

---

1. In their response to Unigard's Concise Statement of Material Facts, Plaintiffs assert the adjacent property was owned only by William McCormick. Plaintiffs, however, do not identify any evidence that supports their as-

sertion. In their Second Amended Complaint filed in state court and attached as an exhibit to Plaintiffs' Amended Complaint, the McCormicks allege the property was jointly owned by Mr. and Mrs. McCormick.

tion of City Code may be fined up to $1,000 per day for each day of continuing violation" in addition to being liable for all of the City's costs of remediation.

### The Underlying Litigation

By letter dated March 28, 1996, the McCormicks' attorney informed Plaintiffs the McCormicks believed the landslide on their property was caused by conditions on Plaintiffs' property. In a written response to the McCormicks' attorney, Mr. Spada stated:

> Regarding your letter of March 28, we were out of town, but it was on the national news that it rained here pretty heavily.

> You might try God. I think he caused it.

By letter dated June 3, 1996, Plaintiffs informed their insurance agent of the McCormicks' possible claim and asked if they had liability coverage. Even though the McCormicks had not yet filed a formal complaint against Plaintiffs, Unigard retained attorney Jeffrey Kilmer to develop a plan for addressing the McCormicks' anticipated claim. In July 1996, the McCormicks sued the City in state court for negligence and inverse condemnation, but did not sue Plaintiffs. In October 1996, the City filed a third-party complaint against Plaintiffs for indemnity from the McCormicks' claim. In the alternative, the City alleged it was entitled to contribution from Plaintiffs. Unigard defended Plaintiffs in these actions under a reservation of rights.

In March 1997, the McCormicks amended their complaint in the underlying litigation to add Plaintiffs as defendants. The McCormicks alleged Plaintiffs caused the landslide that resulted in damages to the McCormicks' property. The McCormicks also claimed Plaintiffs failed to complete the remediation required by the City, which caused additional damage to the McCormicks' property. Unigard contin-

ued to defend Plaintiffs under its reservation of rights via Attorney Kilmer.

In August 1997, Plaintiffs filed counterclaims against the McCormicks and crossclaims against the City. The cross-claims against the City included claims for indemnity or contribution for the remediation costs; a breach of contract claim related to a sewer pipe that allegedly led to the need for remediation; a claim for restitution of remediation costs expended for the City's benefit; claims for negligence, trespass, and nuisance; and a claim under 42 U.S.C. § 1983. Unigard informed Plaintiffs their pursuit of affirmative claims against both the City and the McCormicks were not within the insurance policy's duty to defend.

The City dismissed its third-party complaint against Plaintiffs without prejudice in November 1997. In 1998, Unigard negotiated with the McCormicks and obtained a settlement of the McCormicks' claims against Plaintiffs. The settlement allowed Plaintiffs to pursue their affirmative claims against the McCormicks and the City.

Plaintiffs' claims against the City and the McCormicks went to trial in 1999. The Multnomah County Circuit Court entered a Judgment in favor of Plaintiffs for $98,688 for remediation costs, 63% against the City and 37% against the McCormicks, plus costs. In September 1999, the City paid $50,000 toward its share of the judgment. In May 2000, the McCormicks' insurer paid Plaintiffs $13,333.20 of its share of the Judgment. Plaintiffs then settled with the McCormicks on the basis of a covenant not-to-sue and a covenant not-to-execute. The remaining portions of the Judgment remain unpaid. Plaintiffs' appeal and the City's cross-appeal of the Judgment remain pending before the Oregon Court of Appeals.

## STANDARDS

Under Fed.R.Civ.P. 56:

Summary judgment should be granted if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. The underlying substantive law governing the claims determines whether or not it is material. Reasonable doubts as to the existence of material factual issue[s] are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party. There must be enough doubt for a "reasonable trier of fact" to find for plaintiffs in order to defeat the summary judgment motion.

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000) (citations omitted).

 State law governs insurance coverage claims. *Bell Lavalin, Inc. v. Simcoe and Erie General Ins. Co.*, 61 F.3d 742, 745 (9th Cir.1995). This Court must interpret and apply Oregon law as the Oregon Supreme Court would apply it. *See S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001). If no decision by the Oregon Supreme Court is available to guide the Court's interpretation of state law, the Court must predict how the Oregon Supreme Court would decide the issue by using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.*

## DISCUSSION

### I. Unigard's Motion for Partial Summary Judgment Regarding the Duty to Defend

Plaintiffs seek a declaration that their insurance policy required Unigard to "defend" them in asserting their affirmative claims against the City and the McCormicks. Plaintiffs also seek restitution of the amounts they have expended for "engineering fees, attorneys' fees and related expenses" to pursue these claims.

Unigard contends it has fully complied with its obligation to defend Plaintiffs against the claims brought against them by the City and the McCormicks. Unigard asserts it had no obligation to provide legal counsel or to pay related expenses so that Plaintiffs' could pursue their affirmative claims. Unigard seeks summary judgment as to Plaintiffs' First Claim— Count One in which Plaintiffs seek a declaratory judgment that Unigard's duty to defend extended beyond its defense of the claims brought against Plaintiffs by the City and the McCormicks. Unigard also seeks summary judgment as to Plaintiffs' Second Claim for restitution of the attorneys' fees and other expenses allegedly incurred to pursue Plaintiffs' affirmative claims against the City and the McCormicks.

### II. Unigard Had No Duty to Defend Plaintiffs Based on the City's Letters

 Under Oregon law, "[w]hether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy." *Ledford v. Gutoski*, 319 Or. 397, 399, 877 P.2d 80 (1994). Looking only at the facts alleged in the complaint, the court determines whether those facts " 'provide a basis for recovery that could be covered by the policy.' " *Indiana*

*Lumbermens Mut. Ins. Co. v. West Oregon Wood Products, Inc.,* 268 F.3d 639, 644 (9th Cir.2001) (quoting *Ledford,* 319 Or. at 399, 877 P.2d 80). "Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Ledford,* 319 Or. at 400, 877 P.2d 80.

The Unigard policy contains the following liability coverage:

> If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence,' ... to which this coverage applies, we will:
>
> 1. pay up to our limit of liability for the damages for which the 'insured' is legally liable. Damages include prejudgment interest awarded against the 'insured.'
> 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the 'occurrence' or offense equals our limit of liability.

The policy defines "property damage" as "physical injury to, destruction of, or loss of use of tangible property." The personal liability coverage of the policy "does not apply to ... 'property damage' to property owned by an "insured."

 Unigard contends no duty to defend was triggered by the three letters from the City to Plaintiffs even if the letters constituted a "suit" because the letters do not allege facts that could give rise to a covered claim. Unigard maintains the letters from the City to Plaintiffs merely direct Plaintiffs to repair their own

property and the insurance policy excludes coverage for damage to Plaintiffs' property.

Plaintiffs argue the three letters from the City constitute a claim or suit from which Unigard was required to defend them.[2] Plaintiffs assert the letters constitute a claim for damages covered by their insurance policy because the City required them to stabilize their property in order to repair damage to the McCormick property and/or Council Crest Drive. According to Plaintiffs, the letters, therefore, allege property damage to third-party property covered by their insurance policy. Plaintiffs also argue the letters constitute a claim for covered damages because the landslide on Plaintiffs' property resulted in the McCormicks' loss of use of their home and/or the City's loss of use of Council Crest Drive. Under the terms of the Unigard policy, "property damage" includes "loss of use." The Court finds, however, the letters do not make any claim against Plaintiffs for property damage covered by the Unigard policy.

## A. The City's Letters Do Not Allege Damage to Third–Party Property

In each letter, the City clearly directs Plaintiffs as property owners to take various actions to stabilize their own property. In the first letter, dated February 22, 1996, Margaret Mahoney, Director of the Bureau of Buildings, states:

> A landslide occurred on *your property* earlier this month. The City of Portland Bureau of Buildings investigated the slide and determined that it presents a hazard to other properties and/or the public right of way. The purpose of this letter is to let you know what the city will require to remove the hazard.

---

2. Plaintiffs actually refer to four letters attached to their Amended Complaint as Exhibits A—D as constituting the City's claim against them. Exhibit C, however, is a letter

from City Commissioner Charlie Hales to William Conley. This letter, therefore, cannot establish a claim against Plaintiffs because it is not directed to Plaintiffs.

City Code Title 24.70.030 gives us the authority to require you, *as the owner,* to remove the hazard.

Amended Complaint, Ex. A (emphases added). The letter goes on to describe in detail the steps the City requires Plaintiffs to take, including placing "plastic sheets over the landslide face for some distance down the slope, redirecting storm drains and other surface runoff away from the slide area, or silt fencing and/or hay bales or other erosion control devices." *Id.* The City directs Plaintiffs to hire a professional engineer to "design a plan for permanently stabilizing the slope and eliminating the hazard." The City also notes Plaintiffs "as the owner" or their hired engineer will need to apply for the required permit.

The second letter, dated February 28, 1996, is from Victor F. Rhodes, City Engineer for the City of Portland Department of Transportation. Rhodes informs Plaintiffs that "it is your responsibility to provide permanent repairs to the slope of **your property** to prevent future landslides and to mitigate potential for future damage to the public right-of-way." Amended Complaint, Ex. B (emphasis added). He reminds Plaintiffs they "will also need to comply with the directives from the Bureau of Buildings regarding repairing **your property damage.**" *Id.* (emphasis added). Finally, Rhodes notes the City is "aware that the cost of **repairing the damage to your property** may be substantial...." *Id.* (emphasis added).

The third letter, dated August 28, 1996, is also from Margaret Mahoney. She notes "a permit is required for the work to be done **on your lot** ...." Amended Complaint, Ex. D (emphasis added). This letter also addresses Plaintiffs' responsibilities to correct the hazardous conditions on their property.

The issue before the Court is whether the facts alleged in these letters could "provide a basis for recovery that would be covered by the policy." *Ledford,* 319 Or. at 399, 877 P.2d 80. This analysis is complicated by the fact the letters are not a formal complaint. A complaint, in addition to alleging the relevant facts, would set forth the claims asserted against an insured and the legal bases for those claims. The City's letters do not ask Plaintiffs to repair or to pay for damage to either the McCormick property or City property. Instead, the letters direct Plaintiffs to take action to remove a hazardous condition on their own property as allegedly required by the City Code.

Plaintiffs contend the City required them to stabilize their property because the landslide on Plaintiffs' property had caused damage to the McCormick property and/or City property. Specifically, they assert the landslide caused a loss of lateral support to the McCormick property and to Council Crest Drive. In the letters, however, the City makes no mention of this alleged loss of lateral support other than to refer to a "hazard to other properties and/or the public right of way" and does not specifically mention Council Crest Drive or any other city street. The City does not and could not make a claim against Plaintiffs for damage to the McCormicks' property because the City had no interest in the McCormicks' property.

Even if the City required Plaintiffs to repair their property to prevent further damage to adjacent property, that fact does not convert the City's letters to a claim for damage to the property of others.

**B. The City's Letters Do Not Allege Facts Showing Damages for Loss of Use**

Plaintiffs contend the City's letters constitute a claim for covered property dam-

age because the landslide on the Plaintiffs' property resulted in the McCormicks' loss of use of their home and/or the City's loss of use of Council Crest Drive.

Under the terms of the Unigard policy, "property damage" includes "loss of use." The City's letters, however, do not mention any loss of use of either Council Crest Drive or the McCormicks' property. The City does not assert a claim against Plaintiffs for the loss of use of Council Crest Drive, and, as noted above, the City had no standing to seek compensation from Plaintiffs for the McCormicks' alleged loss of use of their home. Because the City's letters do not set forth facts that constitute a claim for property damage to property owned by others, the City's letters did not trigger Unigard's duty to defend.

### C. The Court Cannot Look Beyond the Complaint and the Policy in Evaluating Unigard's the Duty to Defend

■■■■ The Court's analysis on the duty to defend is limited to the language in the complaint and the policy. *Ledford,* 319 Or. at 399, 877 P.2d 80. Plaintiffs, however, argue the Court in evaluating Unigard's duty to defend should look beyond the facts set forth in the City's letters and consider the voluminous evidence presented with Plaintiffs' response to Unigard's Motion. Plaintiffs argue a more liberal standard for evaluating the insurer's duty to defend is called for when the complaint is in some form other than a state court civil complaint. Plaintiffs rely primarily on *Ross Island Sand & Gravel Co. v. General Insurance Co.,* 472 F.2d 750 (9th Cir.1973). In *Ross Island,* the Ninth Circuit recognized the Oregon rule on the duty to defend does not lend itself to federal pleading:

> Under Oregon's code pleading system, the duty to defend an action in state court ordinarily is measured by the plaintiff's statement of his cause of ac-

tion in his complaint. Since Oregon's procedural law requires a complaint to state the facts which constitute a cause of action, a relatively simple and businesslike rule calls upon the insurer to study that complaint and then to undertake the defense any time the complaint alleges facts which, if proven at trial, would or could give rise to a liability covered by the insuring agreement.

*Id.* at 752. The court noted a plaintiff in federal court need not allege all the facts giving rise to his cause of action, but may assert claims in broad, general terms. A federal court complaint, therefore, "may or may not provide an insurance carrier with enough information to permit an informed judgment on whether or not he must defend." *Id.* The court ultimately held a broadly-worded federal court pleading may trigger a duty to defend, but the duty evaporates as soon as the complaint is supplemented by material facts that establish the insurer had no duty to indemnify. The *Ross Island* decision does not stand for the proposition that a complaint in a form other than a state court pleading should be more liberally construed than a state court pleading. The court merely recognizes the duty to defend, once triggered by a federal court notice pleading, can be extinguished by subsequent factual development.

Plaintiffs cite no cases that allow the Court to look beyond the policy and the complaint to determine whether the insurer has a duty to defend under Oregon law. The Court, therefore, does not consider the extrinsic evidence submitted by Plaintiffs in support of their argument.

In summary, the Court finds the City's letters do not allege facts that could give rise to a claim for damage to third-party property covered by the insurance policy. The letters, therefore, did not trigger a

duty to defend under Unigard's insurance policy.

### III. Unigard Had No Duty to Pursue Plaintiffs' Affirmative Claims Against the City and the McCormicks

■ Plaintiffs seek restitution of attorneys' fees expended in pursuit of their claims against the City and the McCormicks. Plaintiffs contend their affirmative claims were inextricably intertwined with the defense of the claims brought against Plaintiffs for which Unigard provided a defense. Unigard argues the insurance policy does not require it to provide Plaintiffs with legal services for the pursuit of their affirmative claims. Neither party cites to authority under Oregon or Ninth Circuit law to support their contentions.

■ The insurance policy obligates Unigard to "provide a defense." The issue before the Court is whether this language obligates Unigard to provide defense counsel, necessary experts and related services to pursue Plaintiffs' affirmative counterclaims and cross-claims against the McCormicks and the City. Under Oregon law, an insurance policy must be interpreted according to its plain language. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or. 464, 475, 836 P.2d 703 (1992).

> To determine an insurance policy's meaning, Oregon courts use a familiar and settled methodology, the goal of which is to ascertain the intent of the parties, based on the terms and conditions of the policy. The analysis begins with an examination of the plain meaning of the policy's terms, turns next to the context in which those terms appear, and, as a last resort resolves ambiguity by applying the rule of interpretation against the drafter of the language.

*Protection Mutual Insurance Co. v. Mitsubishi Silicon America Corp.*, 164 Or. App. 385, 389, 992 P.2d 479 (1999), *rev.*

*den.*, 330 Or. 331, 6 P.3d 1100 (2000) (citations omitted).

The language "provide a defense" is not defined in the policy. Unigard asserts the plain meaning of that language obligates Unigard to provide counsel to defend the insured against a claim made against the insured. This interpretation is supported by other policy language. The policy states that Unigard will provide a defense to the insured "if a claim is made or a suit is brought against an 'insured' for damages." Unigard cites several California cases in support of its position. In *James 3 Corporation v. Truck Insurance Exchange*, the insured argued the insurer's agreement to "provide a defense" encompassed an obligation to file counterclaims for the insureds if the counterclaims are "factually intertwined with the affirmative defenses being asserted." 91 Cal.App.4th 1093, 1104, 111 Cal.Rptr.2d 181 (2001). The California Court of Appeal disagreed and held "there is nothing in the policy that contractually obligates [the insurer] to fund and prosecute an insured's affirmative relief counterclaims or cross-complaints." *Id.*

Plaintiffs do not address the policy language in their response. The primary case relied upon by Plaintiffs is *Safeguard Scientifics, Inc. v. Liberty Mutual Ins. Co.*, 766 F.Supp. 324 (E.D.Pa.1991). *Safeguard Scientifics* was an insurance bad faith case in which the insurer wrongfully refused to defend their insured in the underlying action. The court held the attorneys' fees paid by the insured to bring counterclaims had to be paid by the insurer under its duty to defend because the "pursuit of the counterclaims was inextricably intertwined with the defense ... and was necessary to the defense of the litigation as a strategic matter." *Id.* at 334. *Safeguard Scientifics*, however, was reversed in part by *Safeguard Scientifics,*

*Inc. v. Liberty Mutual Ins. Co.,* 961 F.2d 209 (3d Cir.1992), and has been repeatedly called into question, disagreed with, and not followed. *See James 3 Corporation,* 111 Cal.Rptr.2d at 189. In any event, Unigard, in contrast, fully defended Plaintiffs in the underlying actions filed against them by the City and the McCormicks.

The other cases cited by Plaintiffs also involved insurers that breached their duty to defend and were held to have lost the right to control the litigation. These cases are inapposite. *See, e.g., The Oscar W. Larson Co. v. United Capitol Ins. Co.,* 845 F.Supp. 458, 461 (W.D.Mich.1993), *aff'd,* 64 F.3d 1010 (6th Cir.1995) (insurer that breached its duty to defend must pay all defense costs incurred by insured's personal counsel, including costs incurred to assert counterclaims and cross-claims); *Aerosafe International, Inc. v. ITT Hartford of the Midwest,* No. C–92–1532, 1993 WL 299372 (N.D.Cal.1993) (insurer that breached its duty to defend gave up its right to control the litigation).

In the absence of controlling authority to the contrary, the Court finds the Unigard policy language "to provide a defense" does not encompass a duty to prosecute affirmative counterclaims and cross-claims for relief.

### IV. Plaintiffs Failed to Present Evidence of a Contract to Pay for a History of the Record Title

██ Unigard also moves for summary judgment as to Plaintiffs' Second Claim for breach of contract to the extent it seeks payment for a "record history." In their Amended Complaint, Plaintiffs assert Unigard agreed defense counsel "would obtain, share with Spadas and pay the cost of obtaining a history of the record title to the Spada Lot and the McCormick Property, including the dedication of the abutting streets." Amended Complaint at ¶ 23(b). Unigard denies any such agreement.

To defeat Unigard's Motion on this issue, Plaintiffs must come forward with evidence from which a reasonable juror could find a contract existed. Plaintiffs have presented no such evidence. Plaintiffs' Response to Unigard's Motion merely concludes this issue is not ripe for review without citing any evidence or authority. In their Response to Unigard's Concise Statement of Material Facts, Plaintiffs assert Unigard's agreement to obtain the title history is "part of a broader special clarifying agreement to the effect that Unigard would pay for all reasonable and necessary defense costs ...." Plaintiffs identify only four exhibits in support of their claim. The first is Plaintiffs' Exhibit 3, specifically Unigard's response to Request for Admission No. 27. This exhibit is nothing more than Unigard's statement that it agreed to defend Plaintiffs from the claims asserted against them and does not contain any reference to the "title history" at issue. Plaintiffs' Exhibit 19 is a redacted copy of Mark McClanahan's letter to Jeffrey Kilmer, in which he asks Kilmer to obtain an abstract on both the Spada property and the McCormick property. Plaintiffs' Exhibit 20 is a redacted letter from Jeffrey Kilmer to Unigard. On page five of the six-page letter, Kilmer tells Unigard, "We will order an abstract." Plaintiffs' Exhibit 21 is a letter from Jeffrey Kilmer to Mark McClanahan and does not include any reference to the title history.

To the extent Plaintiffs assert a specific contract existed with Unigard to obtain the title history referenced in paragraph 23(b) of the Amended Complaint, Plaintiffs present no evidence from which a factfinder could find such a contract existed.

### V. Plaintiffs' Request for Judicial Notice

██ Plaintiffs filed a Request for Judicial Notice (# 44) asking the Court to take

judicial notice of 1) the Portland City Charter and the Portland City Code and Ordinances, and 2) two statements regarding "loss of lateral support and instability."

Unigard does not oppose Plaintiffs' request for judicial notice of the City Code and Charter. The Court, therefore, grants Plaintiffs' request regarding these municipal laws.

The two statements regarding loss of lateral support and instability are factual matters addressed in the summary judgment record. The Court, therefore, will treat these statements like any other fact established or opposed on summary judgment. Accordingly, Plaintiffs' request for judicial notice of these statements is denied.

## VI. Unigard's Motion to Strike Plaintiffs' Response to Unigard's Concise Statement of Material Facts and Plaintiffs' Separate Concise Statement of Material Facts

Unigard moves to strike Plaintiffs' Response to Unigard's Concise Statement of Material Facts and Plaintiffs' Separate Concise Statement of Material Facts. Unigard contends Plaintiffs' pleadings do not conform to the local rule governing a party's response to a motion for summary judgment.

Local Rule 56(b) provides:

(1) Opposition to a motion for summary judgment must include a response to the separate concise statement that responds to each numbered paragraph of the moving party's facts by:

(A) Accepting or denying each fact contained in the moving party's concise statement; or

(B) Articulating opposition to the moving party's contention or interpretation of the undisputed material fact.

Unigard contends Plaintiffs' two separate pleadings are argumentative and go beyond a response to the facts identified in Unigard's Concise Statement. Unigard further asserts Plaintiffs' pleadings are an attempt to circumvent the page limit for a brief in response to summary judgment.

Local Rule 56(d) limits to five pages a moving party's concise statement of material facts in support of a motion for summary judgment. The rule, however, does not provide a specific page limit for a response to the concise statement. The Court agrees Plaintiffs' response to the concise statement is excessively long and inappropriately argumentative. In the absence of a rule limiting the length of Plaintiffs' response, however, the Court, in the exercise of its discretion, declines to strike Plaintiffs' pleadings.

## VII. Unigard's Motion to Strike Plaintiffs' Exhibits and Affidavits

Unigard moves to strike the exhibits and affidavits of George Spada, George Ward, and Walter L. Wright submitted by Plaintiffs in opposition to Unigard's Motion for Partial Summary Judgment. Unigard contends Plaintiffs' exhibits and affidavits are not relevant to the issue presented in Unigard's Motion.

Plaintiffs obviously disagree with Unigard as to the facts and law pertinent to the issues before the Court. Plaintiffs are entitled to present those arguments and evidence in opposition to Unigard's Motion. In the exercise of its discretion, the Court, therefore, declines to strike Plaintiffs exhibits and affidavits.

### *CONCLUSION*

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment Pursuant to FRCP 56(b)(# 26) is **GRANTED,** and Plaintiffs' Request for Judicial Notice (# 44) is **DENIED in part and GRANTED in part.** Defendant's Motion to Strike Plaintiffs' Exhibits and Affidavits (# 65) and Defendant's Motion

to Strike Plaintiffs' Response to Unigard's Concise Statement of Material Facts and Plaintiffs' Separate Concise Statement of Material Facts (# 67) are **DENIED.**

IT IS SO ORDERED.