[No. H020687. Sixth Dist. July 25, 2001.]

JAMES 3 CORPORATION et al., Plaintiffs and Appellants, v.
TRUCK INSURANCE EXCHANGE, Defendant and Respondent.

## COUNSEL

Wineberg, Simmonds & Narita and Michael R. Simmonds for Plaintiffs and Appellants.

Campbell, Warburton, Fitzsimmons, Smith, Mendell & Pastore and Ralph E. Mendell for Defendant and Respondent.

## OPINION

**WUNDERLICH, J.**—James 3 Corporation and its president, James R. Stanclift, were sued by a competitor in federal court. They tendered the defense of the lawsuit to their business liability insurer, Truck Insurance Exchange (Truck), which accepted the tender subject to a reservation of rights. Truck then retained counsel to provide the insureds with a defense. The insureds objected to being represented by retained defense counsel and, citing an alleged conflict of interest, demanded that Truck allow them to choose their own counsel. Truck refused, and the insureds filed the instant declaratory relief action in the superior court. The trial court granted summary judgment in favor of Truck, finding that there was no actual conflict of interest. The insureds appeal from the ensuing judgment and from an earlier discovery order. We shall affirm the judgment.

### FACTS

Plaintiffs James 3 Corporation, doing business as Sugar Sweet Syrup Company, Inc., and Sugar Sweet's president, James R. Stanclift, manufactured and sold beverage syrups to 7-Eleven and other stores for use in frozen carbonated beverages, more commonly known as "Slurpees." From December 28, 1992, to December 15, 1996, plaintiffs were insured by Truck under various commercial general liability insurance policies.

On August 13, 1997, Coca-Cola Company, which competed with plaintiffs in supplying soft drink syrups to 7-Eleven franchises in the Bay Area, filed suit against plaintiffs in the United States District Court. In its lawsuit, Coca-Cola alleged that Sugar Sweet was dispensing its generic syrup through dispensers owned by Coca-Cola, thereby misleading the public into believing they were receiving genuine Coca-Cola products, and based on these allegations it asserted the following eight causes of action against plaintiffs: (1) trademark infringement under the Lanham Act, (2) contributory infringement, (3) false designation of origin, (4) California trademark infringement, (5) California statutory unfair competition, (6) common law

unfair competition, (7) fraud, and (8) accounting. The following month, Coca-Cola filed a first amended complaint.

Plaintiffs retained an attorney who filed an answer to Coca-Cola's complaint on September 22, 1997. Two months later, that attorney tendered defense of the Coca-Cola action to Truck. Truck accepted the tender and retained Attorney David Miclean of the Ropers, Majeski, Kohn & Bentley law firm to defend the insureds.

On February 6, 1998, Truck notified the insureds that it would provide a defense " 'based on the potential that [Coca-Cola's] complaint seeks damages within the Advertising Liability definition,' " subject to a reservation of rights to deny coverage in the event Coca-Cola's damages were not sustained as a result of plaintiffs' advertising activities. Truck denied coverage for any breach of contract or punitive damages and reserved its right to seek reimbursement of attorney's fees and costs paid to defend noncovered claims. Truck also informed the insureds that there was no "conflict of interest between you and Truck" and that consequently it would not pay for independent defense counsel.

Subsequently, Miclean, Truck's retained counsel, sent Truck an "initial" evaluation of the case identifying various affirmative defenses, including one for antitrust violations. Miclean noted that it might be in the insureds' best interest to file an affirmative counterclaim alleging Coca-Cola's violation of antitrust laws. Later, however, Miclean told the insureds that he had "only been retained to represent [their] interests as a defendant in this lawsuit and would probably not be able to perform work on an affirmative counterclaim (other than perhaps an indemnity claim.)"

In April 1998, the insureds retained independent counsel (the Wineberg, Simmonds & Narita law firm) to codefend the underlying action and to pursue an affirmative counterclaim against Coca-Cola. In May 1998, independent counsel wrote to Truck, demanding that Truck pay their fees and costs because of a conflict of interest. Independent counsel explained, "Truck has reserved its rights on several issues, the outcome of which can be controlled by counsel first retained by Truck for the defense of the claims asserted, raising potential conflicts of interest between Truck and the insured which require Truck to pay for independent counsel. Those issues include, but are not limited to: the fraud claim asserted by The Coca-Cola Company against the insured; Truck's reservation of the right to allocate any payment between covered and non-covered claims and/or to seek contribution or reimbursement from the insured for any costs, fees or indemnity payments made on non-covered claims; Truck's reservation of rights as to contractual damages; and Truck's reservation of rights as to 'advertising activities.' "

In response to the insureds' demand, Truck retained a second attorney, Arthur Schwartz of the Fisher & Hurst law firm, to evaluate and advise whether a disqualifying conflict of interest existed. On June 4, 1998, Schwartz responded to independent counsel, stating that Truck "must respectfully decline [to appoint you as *Cumis*[1] counsel]. . . . In our opinion, no conflict is created by some of the reservations you've cited. As to the remaining reservations, Truck will waive them." Truck then explained that it would waive its advertising activities reservation, thereby agreeing to indemnify the insureds for compensatory damages arising out of the trademark infringement, unfair competition, and related causes of action. It would also waive its reservation of rights as to damages for breach of contract. Truck, however, reiterated that there was no coverage under the policy for Coca-Cola's fraud claim, its claim for restitution and disgorgement of the insureds' allegedly wrongfully obtained profits, or its request for attorney fees under the Lanham Act. Finally, Truck stated it would defer until after the underlying action was resolved any decision to exercise its right to seek reimbursement of indemnity payments or defense costs allocable to noncovered claims.

On June 17, 1998, plaintiffs filed the instant declaratory relief action, requesting a judicial determination that Truck is obligated to pay for *Cumis* counsel because "Truck has reserved its rights on several issues, the outcome of which can be controlled by" defense counsel and because of Truck's refusal to pay for prosecuting the insureds' antitrust counterclaim. Plaintiffs filed a motion for summary judgment in October 1998, but that motion was denied.

In April 1999, the insureds filed a motion to compel further responses from Truck to requests for production of Truck's claims files, correspondence, bills, invoices, reports, coverage evaluations, and claim or billing procedures that in any way referred or related to the Coca-Cola action. The trial court denied the insureds' motion, noting that "plaintiffs have failed to demonstrate that the discovery is reasonably calculated to lead to the discovery of admissible evidence in this case, which is a limited declaratory

---

[1]*San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913] (*Cumis*). In *Cumis*, the court held that "the Canons of Ethics impose upon lawyers hired by the insurer an obligation to explain to the insured and the insurer the full implications of joint representation in situations where the insurer has reserved its rights to deny coverage. If the insured does not give an informed consent to continued representation, counsel must cease to represent both. Moreover, in the absence of such consent, where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured." (*Id.* at p. 375.)

relief case. [¶] . . . [¶] . . . In this declaratory relief action, it's . . . limited [to] whether or not *Cumis* counsel should be appointed."

On June 30, 1999, Truck filed a motion for summary judgment on the ground that there was no conflict as a matter of law. While that motion was pending and notwithstanding the earlier discovery order, the insureds' counsel served subpoenas on the Ropers, Majeski, Kohn & Bentley law firm calling for the oral deposition of David Miclean and for production of the entire file in the Coca-Cola action. The insureds opposed Truck's motion for summary judgment, arguing that Truck's refusal to provide discovery required that the motion be denied or continued pursuant to Code of Civil Procedure section 437c, subdivision (h), so that they could compel compliance with the subpoenas.

In its order granting summary judgment, the trial court stated, "Plaintiffs fail to demonstrate the existence of a triable issue of fact material to determining whether Defendant is obligated to provide Plaintiffs *Cumis* counsel, based either on the theory that appointed counsel is able to control the outcome of a coverage issue to the detriment of Plaintiffs, or on the theory that there is a non-coverage-related conflict of interest which has rendered appointed counsel's representation less effective by reason of his relationship with Truck. See *Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1006-1008 [71 Cal.Rptr.2d 882]; *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1395-1396 [25 Cal.Rptr.2d 242]."

DISCUSSION

A. *Entitlement to independent counsel—statutory and case law*

■ In the landmark *Cumis* opinion, the court held that if a conflict of interest exists between an insurer and its insured, based on possible noncoverage under the insurance policy, the insured is entitled to retain its own independent counsel at the insurer's expense. (*Cumis, supra,* 162 Cal.App.3d at p. 364; see fn. 1, *ante.*)

The *Cumis* opinion was codified in 1987 by the enactment of Civil Code section 2860,[2] which " 'clarifies and limits' " the rights and responsibilities of insurer and insured as set forth in *Cumis*. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 59 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *San Gabriel Valley Water Co. v. Hartford Accident & Indemnity Co.* (2000) 82 Cal.App.4th 1230, 1234 [98 Cal.Rptr.2d 807].) Section 2860 provides, in pertinent part: "(a) If

_____

[2]All further statutory references are to the Civil Code unless otherwise specified.

the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured . . . . [¶] (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits."

"As statutory and case law make clear, not every conflict of interest triggers an obligation on the part of the insurer to provide the insured with independent counsel at the insurer's expense. For example, the mere fact the insurer disputes coverage does not entitle the insured to *Cumis* counsel; nor does the fact the complaint seeks punitive damages or damages in excess of policy limits. (. . . § 2860, subd. (b); [citations].) The insurer owes no duty to provide independent counsel in these situations because the *Cumis* rule is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests." (*Golden Eagle Ins. Co. v. Foremost Ins. Co., supra,* 20 Cal.App.4th at p. 1394.) ▪ For independent counsel to be required, the conflict of interest must be "significant, not merely theoretical, actual, not merely potential." (*Dynamic Concepts, Inc. v. Truck Ins. Exchange, supra,* 61 Cal.App.4th at p. 1007.) Some of the circumstances that may create a conflict of interest requiring the insurer to provide independent counsel include: (1) where the insurer reserves its rights on a given issue *and* the outcome of that coverage issue can be controlled by the insurer's retained counsel (§ 2860, subd. (b); *Golden Eagle Ins. Co. v. Foremost Ins. Co., supra,* 20 Cal.App.4th at pp. 1394-1395); (2) where the insurer insures both the plaintiff and the defendant (*O'Morrow v. Borad* (1946) 27 Cal.2d 794, 800 [167 P.2d 483, 163 A.L.R. 894]); (3) where the insurer has filed suit against the insured, whether or not the suit is related to the lawsuit the insurer is obligated to defend (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050 [8 Cal.Rptr.2d 228]); (4) where the insurer pursues settlement in excess of policy limits without the insured's consent and leaving the insured exposed to claims by third parties (*Golden Eagle Ins. Co. v. Foremost Ins. Co., supra,* 20 Cal.App.4th at p. 1396); and (5) any other situation where an attorney who represents the interests of both the insurer and the insured finds that his or her "representation of the one is rendered less effective by reason of his [or her] representation of the other." (*Spindle v. Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713 [152

Cal.Rptr. 776]; *Golden Eagle Ins. Co. v. Foremost Ins. Co., supra,* 20 Cal.App.4th at p. 1396.)

As we explained in the last paragraph, not every conflict of interest entitles an insured to insurer-paid independent counsel. ■ Nor does "every reservation of rights entitle an insured to select *Cumis* counsel. There is no such entitlement, for example, where the coverage issue is independent of, or extrinsic to, the issues in the underlying action [citation] or where the damages are only partially covered by the policy. [Citations.] (*Dynamic Concepts, Inc. v. Truck Ins. Exchange, supra,* 61 Cal.App.4th at p. 1006.) However, independent counsel is required where there is a reservation of rights "*and* the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." (§ 2860, subd. (b), italics added; *Blanchard v. State Farm Fire & Casualty Co.* (1991) 2 Cal.App.4th 345, 350 [2 Cal.Rptr.2d 884]; *Truck Ins. Exchange v. Superior Court* (1996) 51 Cal.App.4th 985, 994 [59 Cal.Rptr.2d 529]; *Foremost Ins. Co. v. Wilks* (1988) 206 Cal.App.3d 251, 261 [253 Cal.Rptr. 596].)

### B. *Contentions*

The insureds contend they are entitled to independent counsel not because of specific language in section 2860 or in the *Cumis* opinion but rather because of the *policies underlying* section 2860 and *Cumis.* They rely on the following statement from *Golden Eagle Ins. Co. v. Foremost Ins. Co., supra,* 20 Cal.App.4th 1372, "Attorney control of the outcome of a coverage dispute is written into . . . section 2860, subdivision (b) as an example of a conflict of interest which may require appointment of independent counsel. It is not, however, the only circumstance in which *Cumis* counsel may be required. The language of . . . section 2860 'does not preclude judicial determination of conflict of interest and duty to provide independent counsel such as was accomplished in *Cumis* so long as that determination is consistent with the section.' [Citation.] [¶] . . . [T]he governing principle underlying *Cumis* and section 2860 is the attorney's ethical duty to the clients. Thus, an attorney representing the interests of the insurer and the insured is subject to the rule a '[c]onflict of interest between jointly represented clients occurs whenever their common lawyer's representation of the one is rendered *less effective* by reason of his representation of the other.' [Citation.]" (*Id.* at pp. 1395-1396, fn. omitted, italics added.)

### 1. *Refusal to pursue affirmative defense*

■ The insureds contend they have a right to *Cumis* counsel in this case because the attorney retained by Truck "refus[es] to pursue the affirmative

defenses of trademark misuse and violation of the antitrust laws, solely to serve the financial interests of Truck, [thereby] render[ing] him substantially *'less effective'* in defending the Insureds." (Italics added.) We disagree.

This is not a case where the insurer has reserved its right on a coverage issue and outcome of that issue can be controlled by the insurer's counsel. To the contrary, Truck has agreed to defend the insureds against the trademark infringement and related claims *without any reservation of rights*. The antitrust affirmative defense could potentially reduce Coca-Cola's claim for damages for which Truck is liable under the policy. If Truck decides not to prosecute the antitrust defense, then that decision will not adversely affect the insureds.[3] It is Truck that will be harmed as it will have to indemnify the insureds if they are found liable for damages covered by the Truck policy. (*Ivy v. Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652 [320 P.2d 140].)

In this case, the interests of the insureds and Truck do not conflict vis-à-vis defense of the trademark infringement, unfair competition and related causes of action in Coca-Cola's complaint. It is in the interest of both to be found not liable or, if found liable, to minimize damages. As the court explained in a similar situation in *Blanchard v. State Farm Fire & Casualty Co., supra,* 2 Cal.App.4th 345, "Insurance counsel had no incentive to attach liability to appellant. Respondent recognized its liability for certain damages flowing from appellant's liability; thus it was to the advantage of both appellant and respondent to minimize appellant's underlying liability. [Citation.]" (*Id.* at p. 350.) Here, as in *Blanchard*, it is in the interest of both Truck and the insured to defeat liability.

*Golden Eagle Ins. Co. v. Foremost Ins. Co., supra,* 20 Cal.App.4th 1372, the case upon which the insureds rely for the "less effective" language, is clearly distinguishable. In that case, the insurer provided its insured with a defense without a reservation of rights. Because there was no reservation of rights, the insureds would not normally be entitled to independent counsel under *Cumis* or section 2860. But the court found that a conflict arose when the insurer's defense counsel, over the insureds' objections, attempted to negotiate a settlement in excess of policy limits, and that settlement would have exposed the insureds to claims by tenants who were not plaintiffs in the underlying action. Defense counsel's attempt to negotiate a settlement in

---

[3]An insurer has the right to control the defense it provides its insured so long as there is not a conflict of interest. (*Safeco Ins. Co. v. Superior Court* (1999) 71 Cal.App.4th 782, 789 [84 Cal.Rptr.2d 43]; *Assurance Co. of America v. Haven* (1995) 32 Cal.App.4th 78, 87 [38 Cal.Rptr.2d 25]; *Spindle v. Chubb/Pacific Indemnity Group, supra,* 89 Cal.App.3d at p. 714.) This right to control the defense necessarily encompasses the right to determine what measures are cost effective, bearing in mind liability and indemnity exposure.

excess of policy limits rendered his representation of the insureds "less effective" and, consequently, the insureds were entitled to advice from independent counsel regarding settlement.

In *Golden Eagle*, the insurance counsel's representation of the insurance company's interest made his representation of the insureds "less effective," because it exposed them to claims by third parties. Moreover, "one set of clients—the insurers—was seeking to settle the case with the other clients' money." (*Golden Eagle Ins. Co. v. Foremost Ins. Co., supra,* 20 Cal.App.4th at p. 1396.) Here in contrast, Truck's decision not to pursue the antitrust affirmative defense will not expose the insureds to claims by third parties, nor has Truck attempted to settle the case using the insureds' money. Truck's representation of the insureds is not "less effective" because its appointed counsel also represents Truck, as Truck is contractually obligated to indemnify the insureds for any damages awarded in the Coca-Cola action based on trademark infringement, unfair competition and related causes of action. Thus, the insureds' reliance on *Golden Eagle* is misplaced.

### 2. *Refusal to fund and prosecute counterclaim*

■ The insureds also contend they are entitled to *Cumis* counsel based on Truck's refusal to fund and prosecute the insureds' counterclaims for affirmative relief against Coca-Cola. They contend that "[a] reasonable construction of an insurer's agreement to provide a 'defense' would encompass" an obligation to file counterclaims for the insureds when such are "factually intertwined with the affirmative defenses being asserted." Again, we disagree.

Insurance policies are contracts and, as such, are subject to the statutory rules of contract interpretation. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) Under the policy, Truck is contractually obligated to provide the insureds with a defense. However, there is nothing in the policy that contractually obligates Truck to fund and prosecute an insured's affirmative relief counterclaims or cross-complaints. As the court observed in *Barney v. Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966 [230 Cal.Rptr. 215], "Aetna had no duty under the policy to file a cross-complaint on [the insured's] behalf, for nothing in the policy provisions imposes upon the insurer the duty to prosecute claims of the insured against third parties." (*Id.* at p. 975.) Likewise in *Silva & Hill Constr. Co. v. Employers Mut. Liab. Ins. Co.* (1971) 19 Cal.App.3d 914 [97 Cal.Rptr. 498], the court noted, "The duty to defend could not extend to requiring the insurer to take affirmative action to recover money . . . ." (*Id.* at p. 927.)

The cases upon which the insureds rely, *Safeguard Scientifics v. Liberty Mut. Ins. Co.* (E.D.Pa. 1991) 766 F.Supp. 324 and *Aerosafe Intern., Inc. v. Itt Hartford of Midwest* (N.D. Cal., July 23, 1993, No. C-92-1532 MHP) 1993 WL 299372, are again distinguishable. Both of those cases, unlike the instant case, were insurance bad faith cases, and in both the insurers wrongfully refused to defend their insureds in the underlying action. In *Safeguard Scientific*, the court held that expenses and fees paid by an insured to bring noncompulsory counterclaims had to be paid by the insurer under its duty to defend because "the pursuit of the counterclaims was inextricably intertwined with the defense of [the claims against the insured] and was necessary to the defense of the litigation as a strategic matter." (*Safeguard Scientifics v. Liberty Mut. Ins. Co., supra,* 766 F.Supp. at p. 334.) However, *Safeguard Scientifics* was applying Pennsylvania law. Moreover, that opinion was reversed in part by *Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.* (3d Cir. 1992) 961 F.2d 209 and has repeatedly been disagreed with, called into question, and not followed. (See, e.g., *Sherwood v. Hartford.* (1997) 347 Md. 32 [698 A.2d 1078]; *TPLC, Inc. v. United Nat. Ins. Co.* (10th Cir. 1995) 44 F.3d 1484; *American Planned Communities, Inc. v. State Farm Ins. Co.* (E.D.Pa. 1994) 28 F.Supp.2d 964.)

One opinion that did follow *Safeguard Scientifics* was the other case cited by the insureds, *Aerosafe Intern., Inc. v. Itt Hartford of the Midwest, supra,* 1993 WL 299372. In *Aerosafe,* after the insurer refused to defend the insured, the insured hired its own counsel. That counsel prepared but never filed a potential federal antitrust action and a state cross-complaint. In the bad faith action, Hartford argued it should not be responsible for fees and costs related to preparing those actions and cross-complaints. The court, applying California law, noted that "Hartford 'gave up the right to control the litigation.' [Citation.] It cannot now complain that it will not pay for legal work-product that was prepared as part of Aerosafe's defense strategy simply because it was not filed. [¶] . . . While Hartford may now opine that the preparation of such an action as part of Aerosafe's overall defense strategy was improvident or unreasonable, such an opinion hardly amounts to undeniable evidence. Again, having breached its duty to defend, Hartford cannot now attempt retroactively to dictate the legal strategies of Aerosafe's lawyers. [¶] The court will permit Hartford to provide evidence that the cross-complaint and federal antitrust action were unrelated to the defense of the *Systron* action. However, under California's undeniable evidence standard, Hartford will have to show that the subject matter of these projects could not arguably be related to the *Systron* action." (*Id.* at pp. *5-*6, original italics.)

In the instant case, Truck has not breached its duty to defend and therefore has not given up its right to control the litigation. As noted earlier, an insurer

has the right to control the defense it provides to its insured provided there is no conflict of interest. (*Safeco Ins. Co. v. Superior Court, supra,* 71 Cal.App.4th at p. 789; *Assurance Co. of America v. Haven, supra,* 32 Cal.App.4th at p. 87; *Spindle v. Chubb/Pacific Indemnity Group, supra,* 89 Cal.App.3d at p. 714.) Here, Truck has no contractual obligation to file a counterclaim against Coca-Cola and it has decided not to do so. Truck's decision provides no basis for the appointment of independent counsel for the insureds.

### 3. *Reservation of the right to seek reimbursement of defense costs allocable to noncovered claims*

■ The insureds also contend that "Truck's reservation of the right to seek reimbursement of attorneys fees paid to appointed counsel to defend non-covered claims" is a separate and independent reason why they are entitled to *Cumis* counsel. Again, we disagree.

■ In *Buss v. Superior Court, supra,* 16 Cal.4th 35, the California Supreme Court held that in a " 'mixed' " action in which some claims are potentially covered and others are not, the insurer must defend the action in its entirety, including those claims for which there is no potential coverage under the policy. This requirement is not a contractual one but rather is prophylactic. "To defend meaningfully," the court explained, "the insurer must defend immediately. [Citation.] To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The 'plasticity of modern pleading' [citation] allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa." (*Id.* at p. 49.)

Although the insurer must defend the action in its entirety, the insurer has an "implied-in-law" right to be reimbursed from the insured for defense costs allocable solely to claims that are not even potentially covered under the policy. (*Buss v. Superior Court, supra,* 16 Cal.4th at p. 51.) The reason is that the insurer has not received premiums and did not bargain to defend such claims; therefore, defending the entire action "unjustly enrich[es]" the insured. (*Id.* at p. 50.) In seeking reimbursement, the "insurer bears the burden of proving by a preponderance of the evidence that the claim is not even potentially covered." (*State of California v. Pacific Indemnity Co.* (1998) 63 Cal.App.4th 1535, 1547 [75 Cal.Rptr.2d 69].)

■ In the instant case, the insureds argue because Truck issued a *Buss* reservation reserving its right to seek reimbursement of defense costs on

noncovered claims, a *Cumis* obligation under section 2860 was automatically triggered. They rely on the *Buss* case itself, where it was noted that *Cumis* counsel was appointed "[b]ecause of [the insurer's] reservation of rights and the conflict of interests arising therefrom." (*Buss v. Superior Court, supra,* 16 Cal.4th at p. 42.)

However, the *Buss* court was not asked to decide, and did not address, the question of whether an insurer's reservation of the right to seek reimbursement for defense costs of noncovered claims automatically requires appointment of *Cumis* counsel. That question was raised and answered in *Dynamic Concepts, Inc. v. Truck Ins. Exchange, supra,* 61 Cal.App.4th 999, where the court refused to adopt the insured's "proposed per se rule requiring the appointment of an independent counsel whenever a carrier . . . pursuant to *Buss v. Superior Court, supra,* 16 Cal.4th 35, reserves its right to seek reimbursement for defense costs for uncovered claims." (*Id.* at p. 1007, fn. omitted.) Instead, the court found that a case-by-case analysis was required. "The potential for conflict requires a careful analysis of the parties' respective interests to determine whether they can be reconciled (such as by a defense based on total nonliability) or whether an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured." (*Id.* at pp. 1007-1008.) Under section 2860, the focus of the inquiry should be on whether the outcome of a coverage dispute can be controlled by the defense counsel retained by the insurer. (61 Cal.App.4th at p. 1006.) The court also noted that it was not deciding "whether an insurer may be estopped from seeking reimbursement from its insured for the defense costs of uncovered claims when it insists upon appointed counsel rather than allowing the insured to control the defense, with its accompanying control and oversight over defense fees and costs." (*Id.* at p. 1007, fn. 6.)

Notwithstanding the *Dynamic Concepts, Inc. v. Truck Ins. Exchange* opinion, which refused to adopt a per se rule, the insureds continue to maintain that a *Buss* reservation *always* triggers a *Cumis* obligation. They point out that under section 2860, subdivision (b), an insurer is obligated to pay for independent counsel whenever it "[1] reserves its rights on a given issue and [2] the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." When an insurer reserves its rights to seek reimbursement of defense costs for noncovered claims, the first prong of section 2860, subdivision (b) is clearly satisfied. The insureds claim the second prong (attorney control of the outcome of a coverage dispute) is also satisfied in *Buss* reservation cases because the insurer's counsel can control how to allocate defense costs to the various claims. As the insureds state, "[s]ince Appointed Counsel decides how to defend the claims, how to bill his services for the defense, how to describe

his tasks, how to allocate his time, and how much to charge—all of which is beyond the control of the Insureds—Appointed Counsel can control the outcome of this coverage issue." They point out that section 2860 does not define "coverage issue" or limit it to indemnification coverage.

The trial court found that the insurer's duty to defend the lawsuit did not involve a "coverage issue" within the meaning of section 2860, noting in its order granting summary judgment, "Defendant's reservation of the right to seek reimbursement of defense costs allocable to non-covered claims, standing alone, does not constitute[] a 'coverage issue,' because it does not involve the possibility that policy coverage will be determined or affected by the nature of Plaintiffs' conduct as developed at trial." We agree with the trial court.

Attorney control of the outcome of a *coverage* dispute involves insurance *coverage*, i.e., whether a certain risk or peril is *covered* under the policy. Furthermore, the coverage dispute must be one that will be litigated in the underlying action. (*Foremost Ins. Co. v. Wilks, supra,* 206 Cal.App.3d at p. 261.) "The paradigm case requiring independent counsel is one in which the way counsel retained by the insurance company defends the action will affect an underlying coverage dispute between the insurer and the insured. For example, in *Executive Aviation, Inc. v. National Ins. Underwriters* [(1971)] 16 Cal.App.3d 799 [94 Cal.Rptr. 347], a pilot who did not hold a license to fly passengers in common carriage was employed by Executive Aviation to fly potential buyers of an airplane on a demonstration flight. The plane crashed, killing all on board. The passengers' heirs sued Executive Aviation. Its insurer, National, agreed to provide a defense but reserved the right to deny coverage. If National could prove the flight was a commercial carriage flight there would be no coverage under its policy. On the other hand, if the plane was being used in commercial carriage the plaintiffs' burden of proof against Executive Aviation would be reduced because common carriers are held to a higher standard of care. The court held the reservation of rights in this case created a conflict of interest for the attorney retained by National to defend Executive Aviation. Whichever position the attorney took on the issue of the commercial nature of the flight he would be operating directly against the interests of the insurer or the insured." (*Golden Eagle Ins. Co. v. Foremost Ins. Co., supra,* 20 Cal.App.4th at p. 1395.)

"If the issue on which coverage turns is independent of the issues in the underlying case, *Cumis* counsel is not required." (*Blanchard v. State Farm Fire & Casualty Co., supra,* 2 Cal.App.4th at p. 350; see also *McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 227 [221 Cal.Rptr. 421]; *Foremost Ins. Co. v. Wilks, supra,* 206 Cal.App. at p. 261.)

Here, the allocation of defense costs between covered and noncovered claims is not an issue that will be litigated in the underlying Coca-Cola action. Moreover, there is nothing in the record to suggest that defense counsel would violate his ethical duties to completely defend the insureds "as if [they] had retained [him] personally" (*Lysick v. Walcom* (1968) 258 Cal.App.2d 136, 146 [65 Cal.Rptr. 406, 28 A.L.R.3d 368]) against all the allegations in the Coca-Cola complaint, both covered and uncovered. (Cf. *Dynamic Concepts, Inc. v. Truck Ins. Exchange, supra,* 61 Cal.App.4th at p. 1008.) Accordingly, the insureds have not rebutted Truck's showing that there is no actual conflict of interest and that, therefore, the insureds are not entitled to insurer-paid independent counsel.

## C. *Discovery order/request for continuance of hearing on summary judgment motion*

Sometime before April 1999, the insureds propounded upon Truck a request for production of documents that included all of Truck's claims files, correspondence, bills, invoices, reports, coverage evaluations, and claim or billing procedures that in any way referred or related to the Coca-Cola action. When Truck objected to the request on the ground that the materials sought were not relevant to the issues raised in this declaratory relief action, the insureds brought a motion to compel. After a hearing, the trial court denied the motion to compel, agreeing with Truck that "plaintiffs have failed to demonstrate that the discovery is reasonably calculated to lead to discovery of admissible evidence in this case, which is a limited declaratory relief case. [¶] . . . [¶] . . . In this declaratory relief action, it's . . . limited [to] whether or not *Cumis* counsel should be appointed."

On appeal, the insureds contend the trial court wrongfully denied their motion to compel production of Truck's claim files and related documents. They claim that the documents requested "would demonstrate that Truck restricted Appointed Counsel's defense, and that Truck and/or Appointed Counsel were aware of the antitrust and trademark misuse defenses and affirmatively chose not to pursue them in order to hold down the costs of defense. . . . [¶] In addition, the Insureds alleged in the complaint that Truck's reservation of the right to seek reimbursement of defense costs for non-covered claims was a coverage issue, the outcome of which can be controlled by Appointed Counsel. The single, best source of evidence for proving that allegation is Appointed Counsel's bills."

In the trial court, Truck argued that the insureds were "putting the cart before the horse" because they had not yet brought a "bad faith" claim where the documents sought by the insureds might be relevant. The only

documents relevant to a determination of the *Cumis* issue, Truck argued, were the complaint in the underlying action and the reservation of rights letter. We agree. The arguments that the insureds raise in support of their contention that they were denied relevant discovery concern tort issues of bad faith and/or legal malpractice. Indeed, both of the cases upon which they rely, *Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599 [56 Cal.Rptr.2d 341] and *Dynamic Concepts, Inc. v. Truck Ins. Exchange, supra,* 61 Cal.App.4th 999, were bad faith cases. The arguments the insureds raise as to why the discovery sought is relevant do not deal with the issue raised in this declaratory relief action—whether Truck is contractually obligated to provide its insureds with independent *Cumis* counsel because of a conflict of interest. We addressed precisely that issue in part A of this opinion, wherein we concluded there was no disqualifying conflict of interest.

While the documents the insureds sought are not relevant in the instant declaratory relief action, this does not mean they may never become relevant. For example, if defense counsel fails to adequately defend the insureds, or if Truck unreasonably limits the scope of the defense, the discovery in issue could be relevant in a subsequent action for legal malpractice or bad faith. (*Safeco Ins. Co. v. Superior Court; supra,* 71 Cal.App.4th at p. 788.) Likewise, after the underlying action has been resolved, if Truck asserts its right to reimbursement of a portion of its defense costs, then defense counsel's billings to Truck would be relevant. However, in this declaratory relief action, the billings have no bearing on the issue whether Truck's reservation of the right to seek reimbursement creates a conflict for defense counsel entitling the insureds to independent counsel. We conclude that the trial court did not abuse its discretion in denying the insureds' motion to compel production of documents.

The insureds also contend they were entitled to a continuance of the summary judgment motion pursuant to Code of Civil Procedure section 437c, subdivision (h), in order to complete discovery before the court made its ruling. The discovery they sought included: (1) the deposition of Miclean, who failed to comply with a subpoena served on him; (2) the production of Ropers's files; and (3) a motion to compel further deposition testimony from Truck's claims representative, John Hilson. They contend this discovery would allow them to obtain relevant evidence in support of their arguments that Miclean was not pursuing the antitrust affirmative defense in order to hold down Truck's defense costs, that Miclean was restrained from pursuing the defense by Truck, that Miclean had not disclosed to the insureds the essential facts relating to this conflict, and that Miclean could control the outcome of the reserved coverage issue regarding reimbursement of defense costs. The insureds asserted that the "bills would demonstrate the manner in

which Appointed Counsel can control the outcome of the reserved coverage issue relating to reimbursement of defense costs for non-covered claims."

Our conclusions in other parts of this opinion make clear that the discovery the insureds sought to complete was simply not relevant to the issues in this declaratory relief action. As to the arguments that Miclean was not pursuing the antitrust affirmative defense in order to hold down Truck's defense costs and that Miclean was restrained from pursuing the defense by Truck, we earlier explained that an insurer has the right to control the defense it provides its insured so long as there is no conflict of interest. Thus, Truck had the right to pursue or not to pursue the antitrust affirmative defense at its option, provided that its decision did not harm the insureds. As to the argument that Miclean did not disclose to the insureds the essential facts relating to this conflict, we have concluded there was no disqualifying conflict of interest here and consequently nothing to disclose. As to the insureds' final argument that Miclean could control the outcome of the reserved coverage issue regarding reimbursement of defense costs, we have concluded that the reservation of the right to seek reimbursement of defense costs on noncovered claims is not a "coverage" issue.

Since none of the discovery sought was relevant, the trial court did not err in denying the insureds' motion for a continuance.

## DISPOSITION

The judgment is affirmed. Costs on appeal to Truck Insurance Exchange.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

On August 23, 2001, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 14, 2001. Baxter, J., did not participate therein. Kennard, J. was of the opinion that the petition should be granted.