Filed 5/20/13  Sequoia Ins. Co. v. H.C. Makabe & Son CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SEQUOIA INSURANCE COMPANY, | B235532 |
| Plaintiff, Cross-defendant and Respondent, | (Los Angeles County Super. Ct. No. LC085202) |
| v. | |
| H.C. MAKABE & SON, LLC, | |
| Defendant, Cross-complainant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael B. Harwin, Judge.  Affirmed.

Zakariaie & Zakariaie, Jack M. Zakariaie and Niloufar A. Zakariaie for Defendant, Cross-complainant and Appellant.

Archer Norris, GailAnn Stargardter and Ioana R. Mondescu for Plaintiff, Cross-defendant and Respondent.

_____

## INTRODUCTION

Defendant and cross-complainant H.C. Makabe & Son, LLC (Makabe) appeals from a summary judgment entered in favor of plaintiff and cross-defendant Sequoia Insurance Company (Sequoia). We affirm.

## FACTS

Makabe owns a shopping center at 18663 Ventura Boulevard in Tarzana. The center is managed by Bob Wall (Wall). In June 2007, Makabe leased space in the center to Steadfast in Commitment, Inc. dba Re/Max Grand Central (Steadfast).

Makabe's operation of the shopping center was insured by Sequoia under a businessowners insurance policy, effective November 2007 through November 2008.

On October 30, 2008, Steadfast filed a complaint against Makabe and Wall, seeking declaratory relief and damages for constructive eviction, breach of the covenant of quiet enjoyment and possession, intentional infliction of emotional distress, and breach of written contract. The gravamen of the complaint was that Wall engaged in a course of conduct which interfered with Steadfast's use and enjoyment of the property, caused distress to Steadfast's personnel, and was serious enough to rise to the level of constructive eviction.

Makabe forwarded the summons and complaint to its insurance agent, who sent it to Sequoia on November 5. Sequoia did not believe there was coverage "as there was no specific incident nor any property damage or bodily injury alleged." It nonetheless referred the matter to its coverage counsel, Rand L. Chritton (Chritton) of Archer Norris, to make a coverage determination.

On November 18, Sequoia wrote to Makabe that Sequoia would be investigating the matter and was referring the matter to its coverage counsel. It stated that Sequoia did not expect to have an opinion on coverage prior to the time Makabe would be required to file its answer to Steadfast's complaint. He further stated: "If Sequoia has an obligation

2

to assume the defense, we will reimburse your reasonable defense costs incurred from the date of tender of this suit to Sequoia Insurance Company. [¶] Sequoia Insurance Company expressly reserves all right to assert any and all policy forms and conditions and does not waive any rights by conducting this investigation."

On December 3, Chritton notified Sequoia that some of the claims asserted in the Steadfast lawsuit were potentially covered by Sequoia's policy. Because there was potential coverage, he recommended that Sequoia tender defense of the lawsuit subject to a reservation of rights. He added, "However, if the reservation of rights addresses the issue of occurrence and/or the expected or intended injury exclusion, the raising of such issues would create an impermissible conflict which would obligate Sequoia to provide independent counsel pursuant to Civil Code [section] 2860.[1] Given the circumstances of this claim, it is our recommendation that Sequoia not reserve rights on those issues."

On December 5, Sequoia wrote to Makabe that it was accepting the tender of defense of both Makabe and Wall, "reserv[ing] its right to assert that there is neither a duty to defend or indemnify all or a part of the subject litigation." Sequoia stated that it "does not believe that the issuance of the reservation of rights creates an impermissible conflict which triggers the application of Civil Code [section] 2860." In discussing coverage issues, Sequoia noted that the "litigation is covered under the Business Liability policy only to the extent that it presents a claim for damages against an insured in an insured capacity, damages consisting of bodily injury or property damage caused by an occurrence and pursuant to the other terms and conditions of the policy." It stated that many of the damages claimed in the lawsuit did not fall within the definitions of bodily injury and property damage. It also stated that many of the claims in the lawsuit did not fall within the definition of personal and advertising injury included within the policy.

---

**1** Civil Code section 2860 addresses a situation in which "the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured." (*Id*., subd. (a).)

Sequoia assumed that both Makabe and Wall qualified as insureds, reserving the right to contest that assumption. It also "reserve[d] the right to resolve any coverage issues between itself and the insured by a suit for declaratory or other relief. In the event it is determined that some or all of the claims in the subject litigation are not covered under Sequoia's policy of insurance, Sequoia reserve[d] its right to allocate between covered and non-covered claims any payment of settlement, judgment and/or defense costs and to seek reimbursement for any such payments and costs."

Sequoia appointed attorney Normand A. Ayotte (Ayotte) to represent Makabe and Wall. He had represented Makabe in two prior lawsuits. After discussing the matter with Sequoia, which had been informed by Wall that the allegations in the Steadfast complaint were untrue and that Makabe intended to file a cross-complaint for rent due, Ayotte concluded there was no conflict of interest which prevented him from representing Makabe and Wall in the Steadfast litigation.

On December 8, Makabe's counsel, Zakariaie & Zakariaie (Zakariaie), responded to Sequoia's letter, asserted that a conflict of interest existed and therefore Sequoia was required to appoint independent counsel under Civil Code section 2860. The bases of the assertion were Sequoia's reservation of the right to allocate costs between covered and non-covered claims; Sequoia's reservation of the right to claim there was no "occurrence" and the loss was caused by willful acts of the insured; and Sequoia's refusal to appoint counsel to prosecute a cross-complaint.

Chritton responded on December 18 that Sequoia's reservation of the right to allocate costs did not trigger the duty to appoint independent counsel. Additionally, "Sequoia's reservation of rights . . . does not reserve the issue of occurrence or with respect to the issue of intent" and thus did not trigger Civil Code section 2860. Finally, Sequoia did not have a duty to provide independent counsel to prosecute an affirmative claim. Chritton reiterated: "The issues on which Sequoia has reserved rights are whether there is a claim of bodily injury or property damages as well as the application of both the Professional Services and Owned Property exclusions."

4

Zakariaie responded to Chritton on December 19 that "our argument that an impermissible conflict exists is clearly premised on the fact that the complaint asserts a claim for Intentional Infliction of Emotional Distress, and that Sequoia's reservation of rights letter expressly provided that coverage is provided only to the extent that (1) the litigation presents a claim 'for damages consisting of bodily injury . . . caused by an *occurrence* . . .' and (2) 'pursuant to the other terms and conditions of the policy,' which presumably would include the **'*expected or intended*'** exclusion of the policy." Counsel stated that Chritton was wrong in asserting that Sequoia had not reserved its rights with respect to the issues of occurrence and intent.

Zakariaie further stated, "Even if I could assume from your letter that Sequoia has now elected to forego both such reservations, and has expressly waived any right to deny an obligation to fully defend or indemnify the insured based on a lack of 'occurrence' or pursuant to the 'expected or intended' exclusions, <u>which I surely cannot make such an assumption</u>, your argument still fails." He went on to explain that "Insurance Code section 533[, which precludes coverage for willful torts,] essentially mandates that Sequoia reserve its rights as to the question of intent—the determination of which is determinative of Sequoia's indemnity obligation. This mandated reservation of rights — **as you admit** — justifies the appointment of independent counsel under Civil Code [section] 2860." Zakariaie demanded that Sequoia furnish Makabe with independent counsel by December 23.

Archer Norris responded on December 24 that "for the reasons set forth in Sequoia's reservation of rights letter of December 5, 2008 and Mr. Chritton's correspondence of December 18, 2008, your demand is not well taken." The letter went on to explain why independent counsel was not required and to urge Makabe to cooperate with Ayotte in the defense of the Steadfast litigation.

On January 27, 2009, Sequoia wrote to Zakariaie regarding its understanding that Zakariaie had not permitted an association with Ayotte for the purpose of defending the Steadfast litigation. "Sequoia Insurance Company has accepted the defense of that action

5

subject to Reservation of Rights that does not trigger a *Cumis*[2] obligation. There are several letters in the file from the Archer Norris firm, stating our position. [¶] There is no requirement that the insured accept our defense, but if he does not, he cannot expect to be reimbursed for monies expended in defense of this claim. Nor will he be entitled to reimbursement for any monies paid in settlement as any such payment would be considered a voluntary payment pursuant to the policy and not subject to payment by the carrier. [¶] Under no circumstances will Sequoia Insurance be paying any of your fees. Nor will Sequoia prosecute an affirmative action on behalf of the insured." Sequoia warned that Makabe's failure "to comply with the provisions of the policy may jeopardize any coverage available under the policy."

Zakariaie responded on February 23 that it was "at a loss" as to why Sequoia and Chritton had "taken this clearly erroneous position. Indeed, your December 24, 2008 letter does not address *any* of our arguments, and rather relies on positions and legal authority having no bearing on Sequoia's duties here. It is readily apparent that Sequoia is intent on acting in bad faith by denying our clients the rights to which they are clearly entitled, in clear derogation of Sequoia's contractual and statutory duties." After reiterating its arguments, Zakariaie concluded, "We are thus left no choice but to vigorously defend our clients in this case, and if Sequoia insist[s] on not granting independent counsel to its insured, at the conclusion of this action we will immediately file a separate suit against Sequoia for its bad faith denial of appropriate coverage, and its patent breach of the duty of good faith and fair dealing."

Chritton responded on February 27, reviewing the correspondence back and forth and reiterating, "Again, to avoid confusion on this issue, Sequoia has not reserved its right to contend that the claims asserted within the *Steadfast In Commitment, Inc.* litigation arise out of an 'occurrence'. Sequoia will not assert the 'expected or intended' exclusion included within Coverage A to the Sequoia policy." Chritton further stated that

---

2    *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375.

"Sequoia again reiterates its acceptance of the tender of defense, albeit pursuant to a reservation of rights, but a reservation of rights that does not create the impermissible conflict required to trigger the application of Civil Code [section] 2860. Please reconsider your clients' position in this regard based on the clarification of Sequoia's position."

Zakariaie responded on March 4, "stat[ing] our position for the last time in the simplest way I can." Their position was that "Sequoia has reserved as to the issue of 'occurrence,'" based on Sequoia's December 5, 2008 letter. And even if Sequoia had not reserved its right to claim there was no occurrence, an impermissible conflict of interest arose under Insurance Code section 533. "You keep ignoring this last issue. If you choose to ignore this issue again, I will not bother to reply to you again."

Chritton wrote back on March 6, explaining that Insurance Code section 533 did not require independent counsel, because Civil Code section 2860, subdivision (b), declares that "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage," and "[n]o conflict of interest shall be deemed to exist as to the allegations of punitive damages," i.e., willful conduct by the insured. Chritton again urged Zakariaie to reconsider its position.

Zakariaie responded on April 24, 2009, again explaining its position. Zakariaie urged Chritton to reconsider Sequoia's position.

## PROCEDURAL BACKGROUND

Archer Norris on behalf of Sequoia filed a complaint for declaratory relief against Makabe and Wall on April 17, 2009. It sought a declaration "that no impermissible conflict of interest under Civil Code section 2860 has arisen between SEQUOIA and Defendants"; "that SEQUOIA has a right to defend MAKABE and WALL in the Underlying Complaint pursuant to counsel of Sequoia's choosing"; and "that SEQUOIA has the right to control the defense of the Underlying Complaint under the terms of the Sequoia Policy."

7

Zakariaie filed an answer on behalf of Makabe and Wall on August 3, denying the allegations of the complaint and asserting 15 affirmative defenses, including failure to state a claim, the statute of limitations, estoppel, laches, failure to mitigate damages, unclean hands, waiver, and unknown defenses.

Concurrently with the answer, Zakariaie filed a cross-complaint for breach of contract and breach of the implied covenant of good faith and fair dealing. These claims were based generally on Sequoia's refusal to provide independent counsel for Makabe and Wall.

Sequoia moved for a judgment on the pleadings or, in the alternative, bifurcation of trial of the legal issues raised in its complaint from the factual issues raised in the cross-complaint. Makabe and Wall opposed the motion, arguing that there were factual issues with respect to the complaint, and the issues raised by the complaint and cross-complaint were so intertwined that bifurcation was inappropriate.

The parties' appendices do not reveal what occurred with respect to Sequoia's motion. On May 21, 2010, both the complaint and cross-complaint were dismissed as to Wall.

Makabe filed a motion for summary adjudication on February 11, 2011. It sought an order adjudicating that Sequoia had a duty to provide independent counsel to Makabe in the Steadfast litigation, and therefore there was no merit to Sequoia's complaint for declaratory relief, and Sequoia had no defense to Makabe's cause of action for breach of contract.

Sequoia filed its own motion for summary judgment or, in the alternative, summary adjudication on February 28. It sought summary judgment on both the complaint and the cross-complaint on the ground it had no duty to provide Makabe with independent counsel.

On May 18, the trial court granted Sequoia's summary judgment motion and denied Makabe's motion. It found that "Sequoia's initial reservation of rights letter dated December 5, 2008 reserved its rights with respect to the issue of occurrence." However, "Sequoia withdrew its reservation of rights on the issue of occurrence on December 18,

8

2008. [¶] . . . As a result, there was no impermissible conflict of interest between counsel appointed by Sequoia to defend the underlying litigation and Makabe." Therefore, "Sequoia was not required to appoint independent counsel to represent Makabe." Sequoia was entitled to summary judgment in its behalf on its declaratory relief complaint and a judgment of dismissal on the cross-complaint. Judgment was entered in Sequoia's favor on June 22.

## DISCUSSION

### A. *Standard of Review*

Summary judgment properly is granted if the evidence submitted in support of and opposition to the motion establishes that there is no material issue of fact to be tried. (Code Civ. Proc., § 437c, subd. (c); *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22.) We review a grant of summary judgment de novo to determine whether triable issues of material fact exist. (*Wiener v. Southcoast Childcare Centers, Inc*. (2004) 32 Cal.4th 1138, 1142.) All doubts as to the propriety of granting the motion are resolved in favor of the opposing party. (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 502.)

### B. *The Right to Appointment of Independent Counsel*

Civil Code section 2860 provides that "[i]f the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel." (*Id.*, subd. (a).) "For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first

9

retained by the insurer for the defense of the claim, a conflict of interest may exist.  No conflict of interest shall be deemed to exist as to allegations of punitive damages . . . ." (*Id*., subd. (b).)

Makabe's position on appeal is the same as that asserted throughout the litigation, that Sequoia reserved its right to contest the existence of an "occurrence" within the meaning of the policy, triggering the duty to provide Makabe with independent counsel. Assuming that this is correct, the trial court correctly found that "Sequoia withdrew its reservation of rights on the issue of occurrence on December 18, 2008."  Chritton clearly stated in his letter:  "Sequoia's reservation of rights . . . does not reserve the issue of occurrence or with respect to the issue of intent."  This position was repeated in all subsequent correspondence with Zakariaie, Makabe's counsel, by Chritton, Archer Norris, and Sequoia.

As Makabe states, "'"[w]aiver is the intentional relinquishment of a known right after knowledge of the facts." [Citations.]'"  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.)  "The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right. [Citation.]"  (*Ibid.*)  This rule "requires the insurer to intentionally relinquish its right to deny coverage."  (*Ibid.*)

It is crystal clear—to everyone but Zakariaie—that Sequoia waived, i.e., intentionally relinquished, its right to deny coverage based on the nonexistence of an "occurrence."  Zakariaie's stubborn insistence that it did not do so based on the original reservation of rights letter, despite the subsequent express waivers of the right, is simply wrong.

## C.  *Insurance Code Section 533*

Insurance Code section 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured."  Makabe argues that "the allegations in the Underlying Action regarding the intentional conduct of the insured and the application of Insurance Code section 533 created a conflict of interest based on the presumptive ability

10

of panel counsel hired by the insurer to control the outcome of the lawsuit, where a finding of negligence would require indemnification of the insured by Sequoia, and a finding of intentional tort, would result in no indemnification because of the applicability of Insurance Code section 533."

Insurance Code section 533 "is an implied exclusionary clause which, by statute, must be read into all insurance policies." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 499-500.) However, "an insurer can be held liable to an insured on an estoppel theory for representations concerning the promises of coverage which were made after the 'wilful' tort had allegedly been committed and on which promise the insured relied in dispensing with the services of his personal attorney in the underlying action and permitting counsel selected by the insurer to defend him." (*Id.* at p. 511, italics omitted.) In other words, if the insurer omits from its reservation of rights the protection afforded by Insurance Code section 533, the duty to provide independent counsel is not triggered. (See, e.g., *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 61-62; see also *Miller v. Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 754 ["Where an insurer reserves its right to claim noncoverage under the policy, notice of the reservation must be given to the insured or the reservation is deemed waived."].)

Chritton stated in his February 27 letter that "Sequoia will not assert the 'expected or intended' exclusion included within Coverage A to the Sequoia policy." He explained: "You indicate that Sequoia's appointed counsel would have the apparent incentive of having the conduct of Bob Wall be intentional, rather then [*sic*] negligent. Where, as here, there is no reservation of the issue of occurrence and no assertion of a reservation of rights based on the 'expected or intended' exclusion, the issue is not one of intent but rather whether the damages consist of bodily injury or property damage, as those terms are defined within the Sequoia policy as well as the potential application of the two exclusions identified within the December 5, 2008 reservation of rights."

Chritton added in his March 6 letter that Insurance Code section 533 did not require independent counsel, because Civil Code section 2860, subdivision (b), declares

that "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage," and "[n]o conflict of interest shall be deemed to exist as to the allegations of punitive damages," i.e., willful conduct by the insured.

These two letters make it clear that Sequoia omitted the protection of Insurance Code section 533 from its reservation of rights and waived the right to deny coverage based on the "expected or intended" exclusion. Section 533 did not create a conflict of interest triggering the duty to provide independent counsel.

## D. *Filing of Declaratory Relief Action*

Makabe finally asserts that Sequoia's duty to provide independent counsel was triggered by the filing of the declaratory relief action. It relies on authority stating that a conflict of interest may arise "where the insurer has filed suit against the insured, whether or not the suit is related to the lawsuit the insurer is obligated to defend." (*James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1101.) This reliance is misplaced.

In *James 3 Corp.*, the court noted: "'As statutory and case law make clear, not every conflict of interest triggers an obligation on the part of the insurer to provide the insured with independent counsel at the insurer's expense. For example, the mere fact the insurer disputes coverage does not entitle the insured to *Cumis* counsel; nor does the fact the complaint seeks punitive damages or damages in excess of policy limits. [Citation.] The insurer owes no duty to provide independent counsel in these situations because the *Cumis* rule is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests.' [Citation.] For independent counsel to be required, the conflict of interest must be 'significant, not merely theoretical, actual, not merely potential.' [Citation.] Some of the circumstances that may create a conflict of interest requiring the insurer to provide independent counsel include: (1) where the insurer reserves its rights on a given issue *and* the outcome of that coverage issue can be controlled by the insurer's retained counsel [citations]; (2) where the insurer insures both the plaintiff and the defendant [citation]; (3) where the insurer has filed suit against the insured, whether or not the suit is related to the lawsuit the insurer is obligated to defend

12

[citation]; (4) where the insurer pursues settlement in excess of policy limits without the insured's consent and leaving the insured exposed to claims by third parties [citation]; and (5) any other situation where an attorney who represents the interests of both the insurer and the insured finds that his or her 'representation of the one is rendered less effective by reason of his [or her] representation of the other.' [Citations.]" (*James 3 Corp. v. Truck Ins. Exchange*, *supra*, 91 Cal.App.4th at pp. 1101-1102.)

Makabe also relies on rule 3-310(C) of the Rules of Professional Conduct, which provides that an attorney "shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . . ."

Contrary to Makabe's claim, nothing in *James 3 Corp.* or rule 3-310(C) supports a conclusion that "the moment" Sequoia filed its declaratory relief action, Makabe was entitled to independent counsel in the underlying Steadfast litigation. *James 3 Corp.* merely lists "circumstances that *may* create a conflict of interest requiring the insurer to provide independent counsel." (*James 3 Corp. v. Truck Ins. Exchange*, *supra*, 91 Cal.App.4th at p. 1101, italics added.) Rule 3-310(C) of the Rules of Professional Conduct prevents an attorney from representing two clients when their interest conflict. So long as the panel attorney representing Makabe in the underlying litigation did not also represent Sequoia in the declaratory relief action, we see no problem of conflicting loyalty.

## DISPOSITION

The judgment is affirmed.  Sequoia is to recover its costs on appeal.


JACKSON, J.


We concur:



PERLUSS, P. J.



ZELON, J.